GEORGE HERBERT, by Next Friend, Respondent, v. MOUND CITY BOOT & SHOE COMPANY, Appellant.

90   305,
96   ⁹382
100  ³211

### St. Louis Court of Appeals, November 19, 1901.

1. **Negligence: PLEADING: PETITION: CAUSE OF ACTION: KNOWLEDGE OF DEFECT IN MACHINERY.** A petition, founded on negligence of defendant, states a good cause of action, notwithstanding the omission of an allegation that plaintiff had no knowledge of the defect of machinery which caused his injuries.

2. ———: ———: ———: **EVIDENCE: MASTER AND SERVANT.** It is not always necessary, in order to make a master liable at the suit of a servant for an injury resulting from a defect in the appliance which he had furnished the servant to work with, to prove the master had actual knowledge of the defect. It is sufficient if the evidence shows he might, by the exercise of ordinary care, have acquired knowledge of it in time to put the appliance in a safe condition.

3. ———: ———: ———: ———: ———. Mere knowledge by a servant that an appliance is defective and that risk is incurred in its use, will not, as a matter of law, defeat a servant's action, when the danger was not such as to threaten immediate injury, or where it was not unreasonable to suppose the appliance might be safely used with care and caution.

4. ———: ———: ———: **CONTRIBUTORY NEGLIGENCE: RISK, ASSUMPTION OF.** The two doctrines of contributory negligence and assumption of risk are entirely distinct, and, in many instances, can not be used interchangeably without confusion.

5. ———: ———: ———. And, on the other hand, the facts of a case may be such that if the plaintiff assumes the risk of unusual danger in such sense as to preclude him from holding the defendant liable, he is really guilty of contributory negligence. The doctrine of assumption of risk arises out of contract, express or implied, by which, it is held, the employee, for the sake of the compensation to

be paid him for his work, agrees to take the chances of the risk to which he is exposed in performing it.

6. **Master and Servant: WARNING FROM MASTER TO SERVANT.** A warning is never required from a master to a servant if apprised of the peril, or when it is obvious, simply because the law does not require a wholly superfluous thing to be done.

7. **Pleading and Practice: INSTRUCTION.** An omission in a plaintiff's instruction may be cured by those given for the defendant; but a false ground of recovery in an instruction given for plaintiff is not thus cured.

8. ———: ———. Where the law is properly declared for the defendant in an instruction, but its liability is unduly extended by another given for the plaintiff, the error is not cured.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

Reversed and remanded.

### STATEMENT OF THE CASE.

George Herbert was a boy eighteen years old at the time the accident occurred which forms the basis of this action. He was employed by the appellant in a shoe factory, his duty being the operation of a machine known as a heel compressor. This machine was used for pressing heels and was run by steam power. It was provided with a mold into which the operator first placed the leather, he then pressed down a treadle with his foot and this caused a steel plunger to come down on the leather, thereby forming the heel into permanent shape. In shaping a heel, it was the operator's duty, after placing the leather in the mold to press down this treadle and immediately take his foot off, which action caused a certain cogwheel that controlled the plunger, to make one revolution and then stop, thereby bringing the plunger down once on the heel and back again to its original position, about four or five inches

above the mold or die. By an automatic action of the machine, when the heel was pressed, it was taken out of the mold and thrown to one side, leaving the mold ready for a fresh heel to be inserted. On the other hand, if the operator should keep his foot on the treadle, this cogwheel would continue to revolve until the treadle was released, and the plunger would continue its up-and-down motion. In case a machine of this kind fails to stop after one revolution, when the operator has duly removed his foot from the treadle, such continuing action of the machine is called "repeating." In this case, plaintiff testified that after he had placed a heel in the mold, he pressed the treadle and duly removed his foot therefrom, and while he was in the act of placing a second heel in the mold, the machine repeated, the plunger came down on his hand, mashing it so three fingers had to be amputated, for which injury the action was brought. The machine's repeating on the occasion when plaintiff was hurt, was charged in the petition, to be owing to the fact that it was out of repair by reason of long use. The petition states the matter as follows:

"In order to compress the heels it was necessary to press down a treadle with the foot, which released a catch or 'dog' by pushing away a lock at the side of the machine, allowing the 'dog' to drop down and catch in notches in said cogwheel; that when said machine was in proper order, after pressing down said treadle with the foot and releasing said catch or 'dog,' said lock would, by means of a strong spring, readjust itself, and when said 'dog' would perform one revolution it would catch it and throw the machine out of gear and stop it until another heel was placed in the machine, and the treadle was again pressed down.

"Plaintiff states that by reason of long use said machine became out of repair, so that when he pressed the treadle and said 'dog' would make the revolution, said lock would not

always catch and stop the machine, but that it would continue on around or 'repeat.'"

There were further allegations that the machine was complicated; that plaintiff was not familiar with machinery and it was the duty of the defendant to instruct him in the operation of the machine and the danger incident thereto, and also his duty to furnish plaintiff with good and reasonably safe machinery and tools and keep the same in repair; that defendant negligently and carelessly failed to properly instruct plaintiff in the operation of said machine or to warn him of the danger incident thereto, and negligently and carelessly allowed it to become and remain out of repair as aforesaid, so that while plaintiff was operating said machine on the twenty-fourth day of January, 1900, and was placing a heel in it as was his duty and within the scope of his employment, and without pressing down the treadle, the lock failed to work, the machine "repeated," caught plaintiff's hand and mashed it as aforesaid.

It was also alleged defendant knew, or by the exercise of ordinary care might have known, the machine was out of repair and dangerous.

Defendant's answer contained a general denial, a plea of contributory negligence on the part of plaintiff in putting his foot on the treadle and causing it to come down while his hand was under the plunger, and knowledge by plaintiff of the condition of the machine and whatever danger there was in operating it, so that he assumed the risk.

*Geo. F. McNulty* and *T. Percy Carr* for appellant.

(1) The petition is fatally defective in failing to allege that the plaintiff had no knowledge of the defect in his machine. Epperson v. Postal Cable Co., 155 Mo. 346. (2) The plaintiff must recover, if at all, on the specific negligence

charged in his petition. Brown v. Hershey Land and Lumber Co., 65 Mo. App. 162; Covey v. Railroad, 86 Mo. 635; Price v. Railroad, 72 Mo. 414; Harper v. Railroad, 44 Mo. 488; Hogan v. Railroad, 150 Mo. 36; Chitty v. Railroad, 148 Mo. 64. (3) The master is not the insurer of the safety of his servant. He is not required to furnish machinery which is absolutely safe. It is sufficient if the machinery which he furnishes is reasonably safe when properly used. Blanton v. Dold, 109 Mo. 64; Bender v. Railroad, 137 Mo. 240; Friel v. Railroad, 115 Mo. 507. (4) Only reasonable or ordinary care is required of a master in providing machinery and keeping the same in repair. Bender v. Railroad, 137 Mo. 240; Williams v. Railroad, 119 Mo. 316; Blanton v. Dold, 109 Mo. 64; Bohn v. Railroad, 106 Mo. 429; Dutzi v. Geisel, 23 Mo. 676; Friel v. Railroad, 115 Mo. 503; Bowen v. Railroad, 95 Mo. 268; Covey v. Railroad, 86 Mo. 635. (5) In order to make the master liable for an injury resulting from a defective appliance, knowledge of the defect must be brought home to him. Epperson v. Postal Tel. Co., 155 Mo. 353; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Current v. Railroad, 86 Mo. 62; Flynn v. Union Bridge Co., 42 Mo. App. 529; Johnson v. Railroad, 96 Mo. 340; Crane v. Railroad, 87 Mo. 588. (6) The court below correctly ruled that Schrick was not a vice-principal and that Schrick's knowledge of the defect was not the knowledge of the company. Grattis v. Railroad, 153 Mo. 380; Brown v. Hershey Land & Lumber Co., 65 Mo. App. 162; Covey v. Railroad, 86 Mo. 635.

*A. C. Maroney* and *Dodge & Mulvihill* for respondent.

(1) The appellant has stated several propositions of law and cited many authorities about which there is no contention, but which, by reason of the facts and evidence ad-

mitted, have no bearing on the case at bar. To these the respondent makes no reply. (2) The petition is correctly drawn. Even if petition be defective (which is denied) the plea of contributory negligence in the answer and the reply make the issue complete. Fisher v. Central Lead Co., 156 Mo. 479, overruling Epperson v. Postal Telegraph Cable Co., 155 Mo. 346. This doctrine (in Epperson's case) was only *dicta,* and not concurred in by a majority of the court. Crane v. Railroad, 87 Mo. 588; Stephens v. City of Macon, 83 Mo. 345; Thompson v. Railroad, 51 Mo. 191.

GOODE, J.—I. The petition states a good cause of action, notwithstanding the omission of an allegation that plaintiff had no knowledge of the defect which caused his injuries. Fisher v. Central Lead Co., 156 Mo. 479.

II. It is not always necessary, in order to hold a master liable at the suit of a servant for an injury resulting from a defective appliance which he had furnished the servant to work with, to prove the master had actual knowledge of the defect. It is sufficient if the evidence shows he might, by the exercise of ordinary care, have acquired knowledge of it in time to put the appliance in a safe condition. Current v. Mo. Pac. R'y Co., 86 Mo. 62; Crane v. Mo. Pac. R'y Co., 87 Mo. 588. Hence, there was no error committed in submitting the case to the jury on a charge which attached responsibility to appellant, if it either knew, or might have known, the machine which hurt respondent was worn out in some of its parts and would repeat without any fault or action on the part of the operator.

III. One ground on which it is claimed respondent should have been nonsuited is, that the evidence fails to show appellant knew the machine was out of repair, or was remiss in not knowing it. It may justly be said in answer to this contention, that the record teems with evidence tending to

fasten absolute knowledge on two or three foremen of the shop who had the oversight of employees and whose duty it was to see that the appliances with which they worked were kept in good order and in safe condition. The machine which hurt plaintiff had often repeated before the time it hurt him, both at that shop and the one defendant occupied a year or two previously and had been frequently repaired in one way or another, if the witnesses are to be believed. Its action was erratic; just when it would work properly and when it would revolve automatically after pressure was removed from the treadle, could not be anticipated. Sometimes, instead of the plunger striking entirely down to the mold or die after the operator's foot was taken off the treadle, it would descend part of the way; that is, would partly repeat. Respondent, through an overseer by the name of Schrick, had called the attention of the foreman, Koopman, who was in charge when he was hurt, to its defective movement, and he had promised to have it fixed. Saxie and McCullough, foremen who preceded Koopman, had repaired it, or had it repaired, several times.

There was evidence that Koopman said the night before plaintiff was injured, he would see that it was fixed. Of course there is a conflict in the evidence on the question, but in view of such testimony as the foregoing, it is idle to contend the court should have sustained a demurrer to plaintiff's case on the ground that there was no proof appellant knew, or might have known, the machine was unsafe in time to fix it. This point involves no consideration of legal propositions, but simply a statement of what the record shows.

IV. Appellant contends plaintiff should have been nonsuited, also, on the ground that though he was familiar with the danger incident to operating the machine, he continued to operate it, assuming the risk of an accident; so that he is

precluded from maintaining an action to recover compensation for his injury.

The evidence as a whole will not permit this view of the case. We can not be controlled by inconsistencies in the testimony, nor assume that of appellant to be necessarily true or that of respondent to be necessarily false. It was the jury's province to weigh the evidence.

The machine was the property of the United Shoe Machinery Company, from which company the appellant leased it. Usually, when it was out of order, the United Shoe Machinery Company was notified and sent an inspector to make such repairs as were needed. It was repaired two or three weeks before the boy got hurt. Two days before, on the twenty-second day of January, the agent of the United Shoe Machinery Company inspected the machine and declared it was in good running order. Moreover, after the last repairs, the boy testified it worked pretty well, but would partly repeat; that is, he says: "I noticed things on it; it did not repeat; it did not exactly come all the way down." Then too, there was evidence that the foreman promised to have it repaired the night before the accident. With such assurances and. reason to believe it was reasonably safe, the law did not absolutely require the plaintiff to quit his employment. Whether he assumed the risk in continuing to work on the machine was a question for the jury to determine in the light of all the evidence, and it was submitted to them by an appropriate instruction:

"The court instructs the jury that if you find from the evidence that the plaintiff, while working for defendant on the compressor in question, knew it was out of order, and knew it might repeat, and knew if it did repeat, it might injure him, and if you further find from the evidence that plaintiff, with this knowledge voluntarily continued at work with said machine without any change in its condition; then he

assumed whatever risk there was of injury to himself if said machine repeated and then your verdict will be for the defendant."

In view of the conflicting testimony, we do not see how there could have been a fairer charge for the appellant, on the issue whether respondent was guilty of contributory negligence in continuing to work with the machine after knowledge of its defects, than the foregoing. Mere knowledge by a servant that an appliance is defective and that risk is incurred in its use, will not, as a matter of law, defeat a servant's action, where the danger was not such as to threaten immediate injury, or where it was not unreasonable to suppose the appliance might be safely used with care and caution. Huhn v. Mo. Pac. R'y Co., 92 Mo. 440; Hamilton v. Rich Hill Mining Co., 108 Mo. 364. This is especially true when the servant makes complaint of the defect to the master and receives assurances of repair, as in this case. Defendants in negligence cases are unwearied in urging the opposite view as the law, or that it ought to be the law; but the ordinary conduct of men in the affairs of life demonstrates the fallacy of their argument. Few persons ever demand that a task be absolutely safe before they will perform it, or a course wholly free from peril before they will pursue it. And how often do men abandon their occupation because some unusual danger arises, if it can apparently be averted by exercising prudence? Machinery would cease to move, factories would be closing constantly, trains would never run, if such a theory was followed. A rule requiring servants to always cease work on account of an extra hazard or take the consequences, instead of trusting to an assurance of repairs, if such assurance is given, would be unjust not only to them but to employers also, and wholly impractical. The question in all cases is, and ought to be, considered from both a legal and practical point of view, was the peril so great that a person of common

prudence would not have continued in the employment unless it was removed? If it was, the servant was guilty of contributory negligence if he went on with his work while the danger remained, and could not recover if injured; otherwise the tort was the master's if he had actual or constructive notice in time to make repairs; and he is answerable to the servant for any hurt the latter suffered. Settle v. Railway Co., 127 Mo. 336. The two doctrines of contributory negligence and assumption of risk are entirely distinct, and, in many instances, can not be used interchangeably without confusion. On the other hand, the facts of a case may be such that if the plaintiff assumes the risk of unusual danger in such sense as to preclude him from holding the defendant liable, he is really guilty of contributory negligence. The doctrine of assumption of risk arises out of a contract, express or implied, by which, it is held, the employee, for the sake of the compensation to be paid him for his work, agreed to take the chances of the risk to which he was exposed in performing it. It is obvious, in the case in hand, that the plaintiff, neither by an express agreement nor an implied one, undertook to assume the risk of the peril arising from the machine being in bad order, if, as the evidence tends to show, he remonstrated with his superior about it. The only question then, is, was he guilty of contributory negligence in continuing to work with it before it was repaired, in the light of all the circumstances? Which resolves into this: Was the danger so threatening that a person of ordinary prudence would not have faced it? Settle v. Railway Co., 127 Mo., supra.

V.  The court submitted, by a well drawn instruction, the issue whether appellant had used reasonable care in ascertaining if the machine was out of order, which instruction told the jury that if they found it had been inspected by a competent inspector a day or two before the accident and was

found to be in good condition and apparently safe, that was exercise of reasonable care in the premises by appellant and it was not liable for the injury to plaintiff. That instruction was requested by the appellant and given as requested.

VI. The real difficulty we find in supporting the judgment, lies in the instruction given at plaintiff's request:

"If the jury believe from the evidence that plaintiff is now a minor of the age of nineteen years and was employed by the defendant as a laborer, and was placed to work on the machine known as a heel-compressor, and if you believe that said machine was complex in its nature, and that it was worn out in some of its parts, and that it would 'repeat' without any fault or action on the part of the operator, this plaintiff, and if you believe and find that the defendant knew this, or by the exercise of ordinary care might have known this fact before the injury complained of, if you find from the evidence such to be a fact, and if you believe and find from the evidence that plaintiff, while using ordinary care such as a person of his age, intelligence, knowledge and experience would use, placed a heel in said machine in the usual and ordinary manner, and that after he had removed his foot from the treadle of said machine, and while he was exercising ordinary care said machine did 'repeat' and mashed three fingers of his right hand, necessitating amputation of parts of the said fingers, and if you find from the evidence that the defendant's servants and agents, Koopman or Saxie, did not exercise that care and caution that an ordinary prudent person would use about his own affairs under the same or similar circumstances *in warning the plaintiff of the danger,* or allowing the said machine to become out of repair, if you find it was out of repair, but was negligent and that said negligence was the direct cause of the plaintiff being injured on the twenty-fourth of January, 1900, then you will find the issues herein joined for the plaintiff, and assess his damages at such

sum as will fairly and reasonably compensate him for the loss of his fingers, and the mental and physical pain he suffered, if any, taking into consideration his station in life and ability to earn a living after he arrives at the age of twenty-one years, not to exceed $3,500, the amount sued for."

It will be seen that the foregoing charge directed a verdict for plaintiff if the jury found defendant's servants, Koopman and Saxie, did not exercise ordinary care in warning plaintiff of the danger incident to using the machine, *or* allowing it to become out of repair.

Failure to instruct and warn plaintiff as to the mode in which to perform his work, was assigned for negligence in the petition, but the proof did not support the assignment. The testimony of the plaintiff shows that he had worked with the machine a year and a half, perhaps longer, and was perfectly familiar with the mode of its operation and how to handle it; also with the fact that it was out of repair and dangerous. He notified a superior workman called the "straw boss"—whatever that unique phrase may mean—that the machine was out of order, shortly before he was hurt, and the latter promised to notify Koopman. Besides, plaintiff had been cognizant of the fact that the machine repeated occasionally for a long time before, and had called attention to its being in bad repair frequently. On this state of facts, it was entirely erroneous to predicate, as a ground of liability, a finding that the foreman had failed to instruct or warn him. No knowledge could have been imparted to him which he did not already possess, either about the use of the machine or its dangerous condition; and a warning is never required from a master to a servant when the servant is apprised of the peril or when it is obvious; simply because the law does not require a wholly superfluous thing to be done. Nugent v. Milling Co., 131 Mo. 241; Jackson v. Railway Co., 104 Mo. Mo. 456; Wolter v. Wire Co., 14 Mo. App. 592.

The instruction is also open to criticism in mentioning Saxie's name, for the reason that the testimony shows that foreman had repaired the machine while he had charge of it and that the defect which caused plaintiff's injury arose, or recurred, after Saxie had been succeeded by Koopman. The jury should have been told, too, that the defendant must have known of the defect long enough before the accident to have repaired it; or have had the means of knowing of it by ordinary care.

The court, it is true, instructed the jury that if plaintiff had been at work with the compressor for eighteen months previous, was familiar with its operation and understood the danger of his hand being caught by it in case it repeated, it was not the duty of defendant to warn him of such danger which was apparent, or of which he already knew. But this instruction did not cure the vice of submitting, as a ground of recovery, a failure to warn plaintiff; because the uncontradicted testimony was that he needed no warning; hence, omission to warn him can not be construed into an act of negligence on the part of the defendant. The effect of the two instructions was to leave it to the jury to conjecture that defendant was guilty of negligence on that score, when the whole evidence shows it was not. An omission in a plaintiff's instruction may be cured by those given for the defendant (Gordon v. Burris, 153 Mo. 223), but a false ground of recovery in an instruction given for the plaintiff is not thus cured. Moreover, the last aforesaid instruction for the defendant did not tell the jury, in so many words, that there could be no recovery on that ground, but only that there could be none if they found the facts as the instruction stated them; as though there was evidence to justify such a finding. Where the law is properly declared for the defendant in one instruction, but its liability is unduly extended by another given for the plaintiff, the error is not cured. Welch v. Railway Co.,

20 Mo. App. 477. The error of plaintiff's instruction is that there was no evidence tending to prove the defendant was negligent in failing to warn and instruct plaintiff and hence none on which to base it. For this reason the judgment is reversed and the cause remanded. All concur.