EDWARD B. PARSONS, Respondent, v. HAM-
MOND PACKING CO., Appellant.

Kansas City Court of Appeals, November 3, 1902.

1. **Master and Servant: SAFE APPLIANCES: MASTER'S DUTY.**
An employer impliedly contracts to furnish safe appliances for his
employee, and he must use due care in that behalf.

2. ———: ———: DEFECTIVE TRUCK: PROXIMATE CAUSE.
The evidence is reviewed and held sufficient to submit the question
whether the absence of a stay-brace from the rear end of a truck
was the proximate cause of plaintiff's injury.

3. ———: ASSUMPTION OF RISK: KNOWLEDGE OF DEFECTS.
The servant assumes such risks as are reasonably necessary and in-
cident to his employment and has a right to presume that the mas-
ter will not send him into danger, but he can not rashly expose
himself; however, his mere knowledge of defects in the instru-
mentalities furnished will not charge him with contributory negli-
gence or the assumption of the risk growing out of them unless he
knows the danger of such defects or they are so glaring that any
man, be he master or servant, would understand the danger.

4. ———: ———: CONTRIBUTORY NEGLIGENCE: JURY QUES-
TION. On the facts in this case the question of plaintiff's assump-
tion of the risk of contributory negligence was for the jury.

5. ———: ———: INSTRUCTION: MASTER'S CARE. An instruc-
tion set out in the opinion is held free from the vice of taking from
the jury the question whether the defendant in furnishing the plain-
tiff a certain truck was acting as a reasonably prudent person would
have acted.

Appealed from Buchanan Circuit Court.—*Hon. A. M.
Woodson,* Judge.

AFFIRMED.

*Brown & Dolman* for appellant.

(1) "It is well settled that the master may con-
duct his business in his own way and the employee

knowing the hazards of his employment, waives the right to compensation for injuries incidentally resulting therefrom." Bradley v. Railway, 138 Mo. 293; (2) Whatever danger there was, was perfectly evident to Parsons and was a risk assumed by him. Jackson v. Railroad, 104 Mo. 448; Thomas v. Railroad, 109 Mo. 200; Ring v. Railroad, 112 Mo. 220; Junior v. Electric Co., 127 Mo. 79; Lucy v. Oil Co., 127 Mo. 40; Roberts v. Telephone Co., 166 Mo. 378; Hunt v. Kile, 98 Fed. Rep. 49; Dredging Co. v. Walls, 84 Fed. Rep. 428. (3) That the box would slip off if the handles were raised too high, either by the act of Parsons himself or by a jolt in pulling the truck over the doorsill was a matter within the ordinary operation of the laws of gravitation which plaintiff was bound to take notice of and govern himself accordingly. Walsh v. Railway, 27 Minn. 367; Nugent v. Milling Co., 131 Mo. 253; Hill v. Drug Co., 140 Mo. 433; Hook v. Railway, 162 Mo. 567. (4) There is no evidence that the absence of the cleat on the end of the truck was in any way the cause of the injury complained of. The case, therefore, ought not to have been submitted to the jury. Plefka v. Knapp, 145 Mo. 316; Settle v. Railroad, 127 Mo. 336; Hicks v. Railroad, 46 Mo. App. 304; Guffey v. Railroad, 53 Mo. App. 462. (5) The court erred in giving to the jury plaintiff's instruction No. 1. Tabler v. Railroad, 93 Mo. 79; Bowen v. Railroad, 95 Mo. 268; Farrel v. Railroad, 115 Mo. 503; Grattis v. Railroad, 153 Mo. 380; Bohn v. Railroad, 106 Mo. 429.

*W. K. Amick* and *Allen & Mayer* for respondent.

(1) The risk incident to using the defective truck was not a risk of his employment. Herbert v. Shoe Co., 90 Mo. App. 305; Pauk v. Beef & Pork Co., 159 Mo. 467; Settle v. Railroad, 127 Mo. 336; Blanton v. Dold, 109 Mo. 64; Booth v. Railroad, 76 Mo. App. 516; Smith v. Coal Co., 75 Mo. App. 177. (2) There was substantial evidence showing that the boxes of ice

on the truck did slip backwards on the truck because of the jarring over the thresholds; and because there was no cleat they slipped off the truck and unbalanced it and injured plaintiff. Sullivan v. Railroad, 107 Mo. 66; Herdler v. Range Co., 136 Mo. 3; Larson v. Mining Co., 71 Mo. App. 512. (3) Defendant complains of plaintiff's instruction No. 1. This instruction is a fair statement of the law as applicable to the facts in this case. Lewis, Admr., v. Railroad, 59 Mo. 945; Gibson v. Railroad, 46 Mo. 163; O'Mellia v. Railroad, 115 Mo. 205; Muirhead v. Railroad, 19 Mo. App. 634; Gibson v. Railroad, 60 Mo. 160.

SMITH, P. J.—This is an action to recover damages for personal injuries alleged to have been received by plaintiff in consequence of the negligence of the defendant. The substantive facts upon which plaintiff bases his right to recover may be gleaned from the allegations of his petition which are as follows:

" . . .

"Second. That plaintiff was in defendant's employ and his duties were to pack ice about pork tenderloins in boxes. That the ice gave out and plaintiff was ordered by defendant's foreman, under whose control he was working, to take a certain truck, which he pointed out to plaintiff, and haul ice. That the truck was from five to seven feet long and two or three feet wide, was supported by two wheels two feet in diameter placed under the center; at one end was two handles and two legs underneath, just back of the handles to rest the truck on. That said truck was difficult to handle in hauling heavy loads of ice as it was difficult to keep the top of the truck in a horizontal position. That said truck was defective and in bad repair in this, that the piece of wood or iron two or three inches high, and as long as the top of the truck was wide, which was part of said truck and belonged on the top of said truck near the back end thereof and extended crosswise of said truck the full width thereof, and which should have been securely fastened to the

top of said truck, was broken off and missing from said truck, so that there was nothing to hold the load in place and keep it from slipping off of the rear end.

"Third. That plaintiff had never been called upon before to haul ice with such a truck, as that was not a part of his duties. That hauling heavy loads of ice was difficult and dangerous work and required experience and skill in that work to do it with safety. Plaintiff had had no experience in that kind of work and was not familiar with the proper construction and operation of such trucks and was unaware of the dangers incident thereto. That plaintiff did not know that the truck was defective and out of repair, but that defendant's foreman had knowledge of that fact.

"Fourth. That in pursuance to the foreman's order the truck was heavily loaded with boxes of ice, about eight hundred pounds, and plaintiff taking hold of the handles started with it. That in the passage there was a threshold strip at a door and on either side of the threshold strip the floor was worn by the constant passage of trucks so that there were holes and depressions in the floor which jarred and jolted the truck so as to shake the load out of position. That the jolting of the truck over these holes and depressions caused the load to slip to the rear and as there was no stop or brace to hold the load in place, it slipped to the rear and off the end of the truck and cast the handles and plaintiff into the air, and plaintiff was thrown against a pickle vat and injured, by having his knee cap broken," etc.

The answer consisted of a general denial with which was coupled the plea of contributory negligence and the assumption of the risk.

At the conclusion of all the evidence adduced at the trial, the defendant requested an instruction in the nature of a demurrer thereto which was by the court denied. The defendant insists that the action of the court touching the demurrer was erroneous for two reasons: (1) because there is no evidence in the record tending to prove that the injury was caused by the

absence of the cleat from the truck, nor to prove any connection between the defect in the truck and the injury, and (2) that the plaintiff in his employment assumed the risk incident to the use of the truck causing his injury.

These contentions must be determined with reference to the evidence disclosed by the record. Turning to it we there find that one O'Connor who was foreman in the "loin room" of defendant's packing house, employed the plaintiff to work in that room; that on the day of the injury while plaintiff was engaged in packing ice in boxes containing pork tenderloins the said foreman pointed his finger towards plaintiff and said to him "you come and go with me," and that accordingly plaintiff followed him through the pickle cellar out onto the dock where the trucks were lined up on the side of the wall, and where he met the dock boss to whom he said, "I want a truck," and the two bosses then walked up the line till they came to the truck here and the latter said to the former, "you can have this one," and thereupon the former turned to plaintiff and said, "you take this truck and go back into the loin room and put on those two boxes and get some ice and take it back into the loin room." The two iceboxes had handles and were placed on the platform of the truck end to end, occupying its entire floor. When the boxes were filled with ice they would weigh about 700 pounds.

The following diagram or representation of the truck is conceded to be correct:

SIDE VIEW OF TRUCK.

END VIEW OF BEVELED PIECE.

After the plaintiff had placed the two boxes on the truck, he pulled it as directed by the foreman out on the dock and there filled the boxes with ice. There had at one time been a cleat or stay brace across the hind end of the floor or bottom of the truck. This consisted of a beveled strip of wood about one inch and a half thick by two and one-half inches wide, fastened down with screws, which had been broken off more than six months before the date of plaintiff's injury. The testimony for plaintiff showed that the stay brace or cleat was designed and used to hold and keep the load on the truck in its place.

The foreman himself testified, that the tendency of heavy boxes on a truck like this one, was to jolt and slip around and to go backwards. After the ice was loaded into the boxes the plaintiff in pulling the truck into the "loin room" had to pass from the dock through the outer door and then across the pickle room, then through the inner door leading into the "loin room." The thresholds of these doorways projected above the level of the floor an inch and a half, and the floor adjoining on either side of that of the inner door had been considerably worn away by truck wheels passing over it so that it was rough and uneven at that place.

When the boxes on the truck had been properly placed on it and filled with ice, plaintiff took hold of the truck handles with his back to the truck and then started on his way to the "loin room" as he had been ordered to do. When he reached the first threshold he pulled the truck over it and proceeded to the other, in passing over which the truck was jolted and the two iceboxes, having nothing across the back end of the platform of the truck to hold them, slipped backwards where their great weight caused the forward end to which the handles were attached and of which the plaintiff there had hold, to tilt up and thus carried plaintiff off his feet and threw him against a pickle vat whereby his knee cap was so fractured that he will likely be therefrom disabled for life.

It does not appear that the plaintiff had been accustomed to hauling this truck or any like it loaded as this one was, nor does it appear that he noticed the absence of the cleat or stay brace until after the accident, nor that he knew there was any risk or danger attending the use of it in the condition in which it then was.

One Groom, an employee of the defendant, who was present when the accident occurred, testified that it looked to him like the plaintiff got the handles too high—got a new hold to make it a little lighter and the consequence was he got it too high and the bottom of the bed being wet and slick, and there being nothing to hold the boxes, they slipped off. The plaintiff himself testified that when he passed over the first threshold he felt it but that he did not look back, but kept on and when the truck struck the edge or rise of the second threshold he felt it—it raised him off the ground when he heard the boxes tumbling down, so it does appear from the testimony of the plaintiff that the catastrophe was brought about in the manner which it appeared to the witness Grooms to have happened.

There was evidence which tended to prove that the defendant employed a great number of trucks of various patterns around its packing house and that some of those like the one in question had the cleats broken off or removed, and that in some of the uses to which they were put they were more convenient without the cleats.

The question therefore is, whether or not the foregoing facts disclose any liability on the part of the defendant? The employer impliedly contracts to furnish suitable machinery and appliances for his employee to work and operate with and he must use due care in that behalf and is liable for damages occasioned by any neglect in that respect.

The defendant's contention is that even though the truck was defective, there is no evidence tending to show any causal connection between the defect and

the injury.   Now, if we indulge, as we must, every inference of fact in favor of the plaintiff which a jury might indulge with any degree of propriety, we must conclude that had it not been for the absence of the cleat or stay bar from the hind end of the truck floor, the boxes of ice which were loaded thereon would not have slipped back, when the truck passed over the thresholds, and caused the front end where the handles were attached, which plaintiff was holding, to tilt and so lift plaintiff off his feet and throw him down and so seriously injure him.   The inference, it seems to us, is irresistible that but for the absence of the cleat or stay bar, the iceboxes would not have slipped backward and thereby increased the weight on the rear end of the truck so as to have caused the tilt which carried plaintiff off his feet and in that way injuring him.   The direct cause of the injury must be ascribed to the defect in the truck.   The injury can be traced to no other cause.

This case is not to be likened to that of Plefka v. Knapp, 145 Mo. 316, cited by defendant, for there it did not appear that the fall of the plank, which injured plaintiff, from the hoister, was caused by the absence of the shoe, nor was there any proof by which the jury might determine what caused the fall of the plank.   No connection was shown between the defect in the machine and the injury, while here there is abundant evidence which tends to prove that the tilting of the truck which injured plaintiff was caused by the defect in the truck—the absence of the cleat or stay bar.   Anyway, there was sufficient evidence to carry the case to the jury upon the issue as to whether or not the defective condition of the truck was the proximate cause of the injury.

In adverting to the other objection argued under the demurrer, that is to say, the assumption of the risk, it is to be observed that it is the master's duty to his servant to use reasonable diligence in providing for him a safe place to work and such duty extends not only to such unnecessary and unreasonable risks

which are in fact known to him, but such as he might be reasonably expected to know under the facts and circumstances connected with the service. The servant assumes such risks as are reasonably necessary and incident to his employment as well also as such extraordinary and unusual risks as he may see fit to knowingly assume. But he is not required to exercise the same degree of care and diligence in inspecting and investigating the risks to which he may be exposed as the master, but he has the right to presume that the master will furnish him a reasonably safe place to work and when directed by the master or his *alter ego* to perform certain services, he has a right to presume that he will not send him into a place of danger without assuming the risk of doing so. But he can not rashly or deliberately expose himself to danger which he knows and appreciates and then hold the master responsible in damages for injuries sustained by reason of his own rashness.

But it is one thing to be aware of defects in the instrumentalities furnished by the master for the performance of the work assigned to him, and another thing to know or appreciate the risks resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence or assumption of the risk growing out of them. The question is, did he know or ought he to have known, in the exercise of ordinary prudence and common sense that the risks, and not merely the defects, existed. Sullivan v. Railway, 107 Mo. 66; Doyle v. Trust Company, 140 Mo. 1. When the defect is so glaring that obviously with the utmost caution the danger is still imminent so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking he must be held as a matter of law, to be guilty of contributory negligence. But if the defective appliance, although dangerous, is not of such a character that it may not be reasonably used by the exercise of skill and diligence, the servant does not assume the risk. He is required

to exercise the care incident to the situation in which he is placed and whether he exercised that degree of care is a fact for the jury to determine. Thorpe v. Railway, 89 Mo. 650; Conroy v. Vulcan Iron Works, 62 Mo. 35. If the risk is such as to be perfectly obvious to the sense of any man, whether he be master or servant, then the servant assumes it.

These rules are alike applicable whether the case be one where the injury arises from the use of defective or unfit appliances or from the unsuitableness or unsafety of a place in which the servant is required to work. Booth v. Air line, 76 Mo. App. 516; Herbert v. Shoe Co., 90 Mo. App. 305; Smith v. Coal Co., 75 Mo. App. 177; Huhn v. Railway, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 364; Holloran v. I. & F. Co., 133 Mo. 470; Stoddard v. Railway, 65 Mo. 514; Devlin v. Railway, 87 Mo. 545; O'Mellia v. Railway, 115 Mo. 205; Bradley v. Railway, 138 Mo. 293.

Neither an assumption of the risk nor negligence on the part of the servant in a case like this necessarily arises from his knowledge of the defect, but is a question of fact to be determined by the jury from such knowledge and other circumstances. When a servant enters the service of a master he not only assumes the risks incident to such service, but all such risks as are apparent and obvious as a result thereof. Unless the plaintiff, by the exercise of the care and diligence that an ordinarily prudent man would have exercised under the circumstances, had become apprised of the *risk* incident to the use of the defective truck in the particular service in which he was required to use it, his mere knowledge of the existence of the *defect* would not preclude a recovery. The plaintiff had had very little experience in the use of a truck of the kind, and none in hauling heavy loads of ice. Without such experience he could not know that when heavy boxes of ice were placed on it, that the pulling of it over the slight inequalities in the surface of the floor that the jolting motion, if any, thereby occasioned would be sufficient to move the boxes backward over the hind

end of the truck, or, that the presence of the cleat or stay bar was necessary to keep the boxes in place while the truck was being pulled from the dock into the "loin room," or, that the absence of such cleat or stay bar increased or facilitated the risk incurred in using the truck in the pulling of it loaded with the ice boxes.

It must be presumed that the plaintiff was sufficiently acquainted with physics to know the effect and operation of the law of gravitation, but he would not be presumed to know just what would be the extent of the jolt or rebound of the truck, for that would largely depend upon the height of the obstructing inequality in the floor and the diameter of the wheels, nor whether such a jolt or rebound would have the effect of unsettling the load, or causing it to slip backwards over the hind end of the truck in the absence of the cleat or stay bar. A knowledge of the existence and operation of the law of gravitation did not go far enough to put the plaintiff in the position of assuming the risk incurred in the use of the defective truck, in the work required of him. While it may be that the plaintiff should be held to have known of the defective condition of the truck, there is no evidence from which it may be inferred that he knew of any risk to be incurred in the use which he was required to make of it. There is no ground for claiming that the truck was so glaringly defective and unsafe that a man of common prudence would not have used it.

According to the authorities already referred to, even if the plaintiff did know that the truck was defective and that risk would be incurred in its use, this would not as a matter of law, be sufficient to preclude a recovery, if it was reasonable to suppose it might be safely used by the exercise of care. In the light of this and other rules to which we have already alluded, we are unable to discover anything in the facts which the evidence tends to prove, that would authorize us as a matter of law to declare that whatever risk was incurred by plaintiff in the use of the defective truck was assumed by him.

The defendant for a further assignment of error objects that the following instruction requested by plaintiff should not have been given:

"If the jury believe from the evidence that the plaintiff was in the employ of the defendant as a servant about the operation of its packing house at the city of St. Joseph; and that while so employed the plaintiff was directed by the defendant's foreman to use a certain truck to transport ice, and that the cleat or stay brace on the rear end of said truck used to hold the load in place and keep it from slipping, was broken off or missing, if you find from the evidence it was used for said purpose, so that there was nothing to keep the load from slipping off the rear end of the truck and that the absence of said cleat rendered said truck defective and unsafe to use by plaintiff, while in the exercise of ordinary care on his part, and that while the plaintiff was pulling said truck along, the load on said truck, by the usual jarring incident to the passing over the thresholds in evidence, if you believe said jarring was usual and incidental in this and similar cases, slipped towards the rear, and because of there being no cleat or stay brace on the rear end of the truck the load slipped to the rear end of the truck and finally off the truck and thereby, and without any negligence on plaintiff's part, cast the opposite end of said truck into the air and out of position and threw plaintiff down and against the pickle vat and injured him, then your verdict must be for the plaintiff."

The defendant's objection to that instruction is that it did not leave it to the jury to say whether or not it was acting as a reasonably prudent person would have acted under the circumstances in directing the plaintiff as its servant to use such defective truck for that particular purpose. This instruction did require the jury to find whether or not the defendant directed the plaintiff, while in its employ, to use a certain truck, in the hauling of ice, which was defective and unsafe for plaintiff to use while doing the work assigned in a careful way. The jury in passing upon the facts hy-

pothesized in this instruction necessarily had before it for consideration the very question which it is contended it did not have. If it found for plaintiff, it indisputably found that the defendant was guilty of negligence or that it did not act as a reasonably prudent person would under like circumstances in directing the use by the servant of the defective truck for a particular purpose. The finding of the former was a negation of the latter so that the question which defendant insists was omitted from the hypotheses of said instruction was submitted by it in a negative form.

It results that the judgment which was for the plaintiff in the court below must be affirmed. All concur.