STEPHEN I. BROWN, APPELLEE, v. SWIFT & COMPANY, APPELLANT.

FILED MAY 29, 1912. No. 16,669.

1. **Master and Servant: INJURY TO SERVANT: LIABILITY.** In a suit by a servant against the master for personal injuries, the employer is liable for the consequences, not of danger, but of negligence.

2. ——: ——: DUTY OF SERVANT. A servant of mature years and of ordinary intelligence should, in performing the duties of his employment, take notice of the ordinary operation of familiar laws of gravitation and govern himself accordingly.

3. ——: ——: APPLIANCES. The general rules of law applicable to the furnishing of tools and appliances by a master are not always applied, where a simple implement is furnished by him to a servant of mature years and of ordinary intelligence.

4. ——: ——: ——: DUTY OF MASTER. Where a servant of ordinary intelligence and of mature years has operated a simple implement often enough to enable him to avoid being injured by it, when using it in the exercise of ordinary care, or where the mode of operating it is so simple that such a servant can at once

perceive the safe and proper way to do so, if exercising ordinary care, there is no duty resting upon the master to instruct him in that regard.

5. ———: ———: TRIAL: DIRECTING VERDICT. In an action by a servant against his employer for personal injuries alleged to have resulted from defendant's negligence, it is error to submit the case to the jury, where defendant is entitled to a requested peremptory instruction on the undisputed facts.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*Greene & Breckenridge,* for appellant.

*McCoy & Olmsted, contra.*

ROSE, J.

Plaintiff was injured when he was attempting to haul a truckload of meat from a freight car to the sweet-pickle cellar of defendant's packing-house at South Omaha. In an action for personal injuries thus sustained, he recovered a judgment for $2,725, and defendant has appealed. Plaintiff died after the case was brought here, and it has been revived in the name of the administrator of his estate.

Plaintiff entered defendant's employ September 15, 1904, and the injury occurred December 3, 1904. He worked in the smoked-meat department until about December 1st, and thereafter handled a truck in the sweet-pickle department. He was 48 years old, 5 feet 10 inches high, weighed 170 pounds, was in perfect health, and was a man of at least ordinary intelligence. In front of, and west from, the packing-house, he was working on the second platform, a structure the length of three freight cars. It is adjacent to the second railroad-switch and extends north and south. A runway from the sweet-pickle cellar to this switch opens to the north and also to the south at the west side of the platform near the center, being equally convenient from both ends. On the day of

the accident, until about 4 o'clock in the afternoon, plaintiff had been hauling meat on a truck from the sweet-pickle cellar up the runway into a car at the south end of the platform. A few minutes before the hour named he had been directed by the foreman in charge to take a truck-load of meat out of a car at the north end of the platform to the sweet-pickle cellar. This order required plaintiff to leave the south end of the platform, where it is 9 feet wide and 2 inches lower than the floor of a freight car, and go to a freight car on the north end of the switch, where the platform is less than 7 feet wide, and, owing to a difference in elevations of the railroad track, 10 or 12 inches lower than the floor of a freight car. The car to which he was directed to go was 8 inches from the platform, and in unloading it the trucks were run in and out on a wooden apron $3\frac{1}{2}$ feet long, one end resting on the floor of the car and the other on the platform. Plaintiff was using an ordinary two-wheeled truck with a box resting on the axle and on shafts supported in front by legs available for brakes, the center of mass being in front of the axle when the box is level. The handles were on the front ends of the shafts. Plaintiff took the truck thus described into the car at the north end of the platform, and after it had been loaded he started to the sweet-pickle cellar. He stood between the shafts with his back to the load, and pulled the wheels onto the apron, intending to turn to the right toward the runway as soon as they reached the floor of the platform. Instead of lowering the handles and sliding the shaft-legs on the platform to retard the motion when the truck began to run down the incline on the apron, he pulled back on the handles, with the effect of raising them without stopping the truck. He failed to make the turn quick enough, and the truck ran across the platform against upright timbers which supported a plank foot-walk along an elevated switch-track 4 feet higher than the platform on which he was working. His left hand was crushed by the impact and pinned to a timber. East of the foot-walk and the elevated switch-

track there was also an elevated platform accessible from the second floor of the packing-house, and all were above the runway through which plaintiff had been passing with his truck the day he was injured. The walk, the switches and the platforms were all parts of permanent structures used by defendant in connection with its packing-house.

The material inquiry is: Was it the duty of defendant to warn plaintiff of the dangers incident to running the truck down the apron to the platform and to instruct him how to perform that part of his work? Plaintiff asserts that he was a green hand, that he had never before hauled a truck out of a car at the north end of the platform, that he did not know the dangers incident thereto, and that, in his new situation and surroundings, he did not know how to handle the truck so as to prevent injury to himself. To defeat a recovery defendant invokes the following rules: In a suit by a servant against the master for personal injuries, the employer is liable for the consequences, not of danger, but of negligence. *O'Neill v. Chicago, R. I. & P. R. Co.,* 66 Neb. 638; *Central Granaries Co. v. Ault,* 75 Neb. 249; *Weed v. Chicago, St. P., M. & O. R. Co.,* 5 Neb. (Unof.) 623. A servant of mature years and of ordinary intelligence should, in performing the duties of his employment, take notice of the ordinary operation of familiar laws of gravitation and govern himself accordingly. *Walsh v. St. Paul & D. R. Co.,* 27 Minn. 367; *Parsons v. Hammond Packing Co.,* 96 Mo. App. 372. The general rules of law applicable to the furnishing of tools and appliances by a master are not always applied, where a simple implement is furnished by him to a servant of mature years and of ordinary intelligence. *Vanderpool v. Partridge,* 79 Neb. 165. Where a servant of ordinary intelligence and of mature years has operated a simple implement often enough to enable him to avoid being injured by it, when using it in the exercise of ordinary care, or where the mode of operating it is so simple that such a servant can at once perceive the safe and proper way

to do so, if exercising ordinary care, there is no duty resting upon the master to instruct him in that regard. *Jones v. Louisville & N. R. Co.*, 95 Ky. 576.

Are these rules of law applicable to the facts stated? The case might be different, had the load behind the servant's back slipped in the box, through a defect of which he had no knowledge, tipped the handles and inflicted personal injuries. *Parsons v. Hammond Packing Co.*, 96 Mo. App. 372. There was no defect in the truck, either latent or patent. The platform where plaintiff was working was part of permanent structures, which had been used for a considerable time without change. There was no hidden danger or defect anywhere. The whole situation was obvious. The conditions could have been seen by plaintiff every time he went into or came out of the car at the south end of the platform. He wheeled the truck into the north car at the identical place where he came out of it. The apron had not been moved. He had been using the same truck all day under conditions differing only in the slant of the wooden apron leading to the car, in weight, and in the width of the platform. He knew as well as his master that the loaded truck, if unobstructed, would run down the apron when started, and that the handles would tip as soon as raised high enough to throw the center of mass behind the axle. This knowledge did not require observation beyond a child's experience with a cart and a seesaw. Plaintiff had hauled the truck up and down an incline all day, and, if he exercised ordinary care, he knew that the shaft-legs, when lowered to the ground, would act as brakes. The evidence shows that he knew the weight of his load. In that respect his master could have known no more. Both the tipping of the handles and the velocity of the truck were due to familiar laws of gravitation as well known to the servant as to the master. The implement used was a simple-one in common use. The mode of handling it is immediately observable to a person of ordinary intelligence and of mature age. It was intended for a single employee. There

is nothing in the record to show that more help was needed in using it, or that plaintiff was not strong enough for that task, or that he did not have a safe place to work. These are clearly circumstances under which the master is not charged with the duty of giving the servant notice of the dangers incident to his employment, or of instructing him how to use the implement provided for him. While his accident and consequent misfortune appeal to human sympathies, there is no principle of law, applicable to the facts, under which a jury can be permitted to find that the negligence of defendant was the proximate cause of plaintiff's injuries. At the close of the testimony defendant requested a peremptory instruction in its favor, which should have been given. It was erroneously refused. In addition, the rules herein stated were violated both in admitting evidence and in charging the jury. Furthermore, the trial court, instead of making a concise statement of the simple issues to the jury, submitted four or five pages of type-written allegations copied from the petition, nearly all of which were immaterial, and directed the jury that the burden was on plaintiff to establish every material allegation of the petition, but did not advise them what the material allegations were. On such a record, the verdict would have to be set aside, even if there could be a recovery under the facts.

The judgment is therefore reversed and the cause remanded, with directions to the district court to dismiss the action.

REVERSED.

REESE, C. J., not sitting.

LETTON, J., dissenting.

In my judgment, when all the facts in this case are considered, it is easily distinguishable from the cases cited where damages from the negligent use of a simple tool are considered. Plaintiff, who had never used the two-wheeled truck in unloading a car, was sent to work in a place where the narrowness of the platform, the weight

of the meat loaded onto the truck, the difference in eleva-
tion of the car floor and the platform, the obstruction
caused by the edge of the apron at the car door, and the
nearness of the overhanging trestle created a condition of
peculiar danger not obvious to an ordinary man who had
not been instructed as to the necessity of using the fric-
tion of the legs of the truck upon the floor of the apron as
a brake in order to prevent the impetus of the heavily
loaded truck from forcing him against the trestle. The
trucks weighed about 400 pounds, and the loads from 600
to 800 pounds. The testimony is clear as to the danger
of taking a heavily loaded truck out of a car at that end
of the platform in the ordinary manner and without bear-
ing down or riding on the handles so as to use the legs
as a brake; and it is undisputed that the only safe way to
unload with the truck under the conditions was to put the
handles down as soon as the wheels were over the edge
of the apron so as to keep the weight from overcoming the
man's resistance and pushing him against the trestle in
front before he could turn the truck. In view of the sur-
roundings, there was danger in doing this work unless it
was done in a particular manner. This being the case,
it was the duty of the employer to point out the danger
of performing it in any other way, and to fail to so in-
struct was actionable negligence.