Sims *v.* The East & West Railroad Co. of Alabama.

1. For two persons of competent strength to load an open flat car with lumber of uniform length, breadth and thickness, by piling the same in parallel tiers one after another, is to do work which common laborers can perform without more hazard to their own security than appertains to ordinary manual labor. It requires no special skill nor antecedent training, and therefore a youth seventeen years of age who engages in it as part of the business for which he was employed by the railway company, is not unduly exposed by reason merely of being left uninstructed in the mode of doing the work and unwarned beforehand of any danger attending it.
2. The plaintiff having been injured by some of the lumber falling upon him, and there being no evidence that the doing of such work properly was dangerous, or that he did not know how to do it properly, or that he was wanting in capacity to know, and nothing being alleged in the declaration as to any defect in the car or any of the appliances, the court was correct in granting a nonsuit.
December 16, 1889.

Negligence. Master and servant. Nonsuit. Before Judge Neel. City court of Cartersville. June term, 1889.

Omitting such parts as are now immaterial, the declaration alleged, in brief, as follows: The railroad company employed Sims as one of its hands in its yard where all its freight was transferred from its cars, and put him under the charge and direction of one Cobb, who had full charge of the yard, directed all the work therein and had full authority to do so, as well as full knowledge of all the danger in and about said work, and particularly the danger in and about the transfer of lumber from one car to another. Sims was young and inexperienced at such work, having no knowledge whatever of the danger attending it; but the railroad company through Cobb directed him, aided by another inexperienced boy, to transfer lumber from certain flat cars to other flat cars. Sims was directed to put standards in the car to which

the transfer was to be made, on the side farthest from the other car, and to remove the lumber from the latter to the former and pile it next to the standards until each stack or layer should be about five feet high, and so continue until the former car should be loaded and the latter car unloaded. There was danger attending the piling of lumber in this way, which was known to Cobb and unknown to Sims. When the first stack or pile was made against the standards, the pressure of the lumber against them, and the weight on the springs of the car on that side, would cause the lumber to lean from those engaged in piling. But after two, three or four of the stacks or piles were made, there was no pressure against the standards and each stack would by its own weight tend to remain erect, and at this time every few feet it became necessary to put in small pieces of lumber crosswise so as to tie the piles together, and to carry up more than one stack or pile at once so as to prevent the lumber from falling; all of which was unknown to Sims and well-known to Cobb, who negligently failed to inform Sims how to pile the lumber with safety to himself, and he, being ignorant of how to do so, continued to pile as he was directed by the railroad company; and after piling three or four piles, brought some plank, put them on the top of the piles erected, and had turned his back to go and get more plank, when said lumber fell upon him, breaking his right leg, etc. Being young, inexperienced and wholly ignorant of any danger, he could not detect any; but one Williams, a servant of the railroad company, did discover the way in which Sims and his youthful assistant were piling the lumber, and saw that the piles had begun to lean towards Sims and were in the act of falling, but failed and refused so to inform Sims; it being impossible for Sims to see or ascertain, from the position in which he was located, that the

lumber was leaning, he being and remaining in the position where Cobb had placed him, and being himself free from any negligence.

The testimony tended to show the following : Sims when hurt was seventeen years old, and was engaged in transferring lumber from a car of the defendant to a car of the W. & A. railroad company. He was employed by Cobb, transfer boss of defendant. Had been working in the transfer yard seven days. Had piled one car of lumber before he was hurt. Piled the lumber like he saw others pile it. His father had been piling lumber there for sometime, and would go to carry breakfast to his father, and saw them piling lumber sometimes. Cobb was present when defendant and one Baldwin commenced to pile the lumber, and told them to hurry up as he wanted the car to send out. The W. & A. car was a shackly car and rocked ; its springs were loose on one side and weighted down ; and the moving across it by Sims and Baldwin would make it rock. They would pick the lumber up from defendant's car, and carry it across to the W. & A. car and drop it down next to the standard until they got it about waist high, and then commenced another tier, shoving the planks up close to the back tier with their bodies. Sims had just let a plank down and shoved it back, and had turned around to get another when the lumber fell on him, breaking his leg. He was asked, "Could you see the lumber was getting out of true ?" He answered, "No, sir." Question : "Why couldn't you see it ?" Answer : "I didn't stop around there to look." Question : "Why didn't you ?" Answer : "I was in a hurry." He saw the car shaking, but did not see the lumber shaking. When he saw the lumber was leaning and not straight on the edge next to him, he would push it back. He did swear on a former trial, and it is true, that he saw the lumber on the car was

shaking before it fell, and that they had piled five tiers on the W. & A. car about six feet high and were piling the sixth tier about three feet high when it fell. Their walking back to defendant's car caused the W. & A. car to rock, which threw down the lumber. There was plenty of room at each end of both cars for them to walk without getting in front of the lumber. Others saw the lumber falling, but did not have time to warn Sims. Cobb did not tell Sims how to pile the lumber; was there when they commenced, but did not stay any time; was backward and forward through the yard while they were at work and could see everything. When turning away from the lumber, you always walk away from it; when loading it, you put the first tier next to the standard and build it up, and then commence a new one on the floor, and by shoving the tiers close together it keeps the car from rocking, the cars being balanced right at the centre and having springs at both sides. The safest way would be to carry more than one tier up at a time. There was plenty of room to walk on the end of the car, but if a man was in a hurry he could not do it.

On this testimony a motion for a nonsuit was sustained; and the plaintiff excepted.

Baker & Heyward, for plaintiff.

M. R. Stansell and I. F. Thompson, for defendant.

Bleckley, Chief Justice.

The grounds of liability set out in the declaration are the failure of the company to warn Sims of the danger of the work assigned to him, and the omission to give him needful and proper instructions by which to perform it safely. But there is no evidence that the work was in any respect more hazardous than that of ordinary labor, or that, if it was, he did not know how to do it safely. He was a witness, but said not a word going to show either that he was ignorant of any danger attend-

ing the work, or that he did not know how to perform it properly. Several other witnesses testified, among them his father, none of whom said that the work was dangerous or that Sims was too young or too ignorant to understand how it should be done. There is no evidence that he was lacking in common sense or in the ordinary capacity of a youth of seventeen years of age. The labor which he undertook was not one requiring the skill of an expert or the experience of a practiced hand or eye. It was such work as any common laborer of his age is capable of doing, just as much so as to plow or chop. It is manifest that the injury did not result from the hazardous nature of the work, but either from the failure of Sims to execute it with due care, or from some defect in the car; and if it resulted from either of these causes, there could be no recovery in the present action. For if it was his own carelessness in doing ordinary work suitable to his age that brought the calamity upon him, he must take the consequences; and if it was the defective condition of the car, that is not embraced in the declaration. To recover because a bad car was furnished upon which to do the work, would be to recover for negligence in the company not alleged. The cause of action as set forth in the declaration not being proved, and there being no evidence from which the jury could infer by any process of right reasoning that it was proved, the court did not err in granting a nonsuit.

The question that the work was not, in its nature, attended with any extraordinary hazard or danger, was settled when this case was here before. *E. & W. R. R. Co.* v. *Sims*, 80 *Ga.* 807. The evidence on that question was substantially the same then as now. The two head-notes prefixed to this opinion sum up the result.

*Judgment affirmed.*