(115 So. 869)

**SEABOARD AIR LINE RY. CO. v. HACKNEY.** (7 Div. 736.)

Supreme Court of Alabama. Jan. 12, 1928.

Rehearing Denied April 5, 1928.

**I. Commerce ⟨key⟩27(8)—Employee delivering, at place of use, material used for instrumentalities used in interstate commerce, is "employed in interstate commerce" (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Railroad employee engaged in work of delivering at place of use material to be used in repair, construction, or operation of those instrumentalities directly used by railroad company in business of interstate commerce, such as rolling stock, station houses, and roadways, is himself employed in such commerce within meaning of Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**2. Commerce ⟨key⟩27(8)—Section hand unloading ties from train along tracks to repair interstate line is "employed in interstate commerce" (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Section hand injured while unloading ties from carrier's train, placing them on right of way for use in repairing carrier's track, which was interstate line and which was used for transportation in interstate commerce, is "employed in interstate commerce" within Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665).

**3. Master and servant ⟨key⟩256(I)—Employee suing under Federal Employers' Liability Act must allege injury while employed in interstate commerce or facts showing it (45 USCA §§ 51–59).**

Railroad employee prosecuting suit under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), must allege in his complaint that he was injured while he was employed in interstate commerce or must allege facts from which law would imply that he was so employed.

**4. Master and servant ⟨key⟩256(I)—Complaint alleging train was engaged in interstate commerce held not to allege employee throwing ties was employed in interstate commerce (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Complaint alleging that defendant's train, on which plaintiff employee was working in

throwing off ties for use in repairing railroad track when injured, was engaged in commerce between states of Georgia and Alabama, did not allege that plaintiff was employed or engaged in interstate commerce within meaning of Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), when injury occurred.

**5. Master and servant ⚖256(3)—Section hand's complaint showing employment in work not inconsistent with employment under foreman sufficiently alleged he was performing duties "under his employment" (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

In action by railroad employee for injuries sustained when struck by tie while unloading ties along railroad track from moving car, complaint omitting averment that plaintiff was performing duties "under his employment" in interstate commerce, under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), at time of injury, but showing that plaintiff was employed in work not inconsistent with his general employment as section hand, under orders of section foreman, his immediate superior, who, in so ordering, was acting within line and scope of his employment by defendant, was sufficient.

**6. Master and servant ⚖149(1)—To constitute "negligent order" it must be apparent to master that obedience would expose servant to peril, beyond ordinary risks.**

To constitute negligent order by master to servant, it must have been reasonably apparent to master, or vice principal giving order, under conditions as he knew or should have known them, that servant's execution of command would expose servant to some peril, beyond ordinary risks of service, against which reasonable care on his part would probably not suffice to protect servant, and if peril was obvious to servant and might readily be avoided by him while discharging duty, master could assume that servant would both observe peril and avoid it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligent.]

**7. Master and servant ⚖150(1)—Master need not foresee servant's negligence and guard against it.**

Master is not required to foresee negligence of servant and guard against it, nor is he required to take more care of servant than servant may be expected to take of himself. ·

**8. Master and servant ⚖150(1)—Master need not caution servant against unexpected, improbable occurrences where there is no appearance of danger.**

Master is not required to caution servant against unexpected, improbable, and unusual occurrences where there is no appearance of danger, his duty being limited to such perils as may reasonably be anticipated.

**9. Master and servant ⚖153(1)—Master employing workmen to do simple task or use simple appliances is not bound to instruct them or inquire into experience.**

Where master employs workmen to do simple task requiring only average strength and. intelligence, he is not bound either to instruct laborers or to inquire into their experience, and same rule holds true where appliances and devices which servant is required to use are of simple character.

**10. Evidence ⚖66—Adult persons of ordinary intelligence are presumed to understand general law of gravity.**

Every adult person of ordinary intelligence must be presumed to understand general law of gravity.

**11. Master and servant ⚖149(1)—Order directing section hand to unload ties from moving train held not negligent (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Where section hand employed in interstate commerce within Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) was ordered to unload ties weighing about 150 pounds each along right of way from moving flat car on which they were stacked crosswise in tiers five or six ties high, stacks being about 50 inches high, and employee was able-bodied man, 28 years of age, of average strength, intelligence, and experience, and had served as section hand before, and was not given training in unloading ties although he had never unloaded ties from train before, and employee was injured when ties from top tier fell while he was stooped over moving another tie, order directing employee to do such work held not negligent.

**12. Master and servant ⚖285(11)—Evidence that tie injuring employee unloading ties was negligently caused to fall by sudden lurch of train held insufficient for jury (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

In action by railroad employee for damages for personal injuries suffered while unloading cross-ties from defendant's moving freight train under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), defendant *held* entitled to general affirmative charge, in absence of evidence that tie injuring plaintiff was caused to fall by sudden lurch of train, or that such a lurch, if it occurred, was negligently caused.

**13. Master and servant ⚖265(6)—Res ipsa loquitur rule held inapplicable where employee was struck by tie from top tier while unloading ties from moving train (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Rule of res ipsa loquitur *held* inapplicable where section hand employed in interstate commerce within meaning of Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) was struck by railroad tie falling from top tier of ties stacked on car while he was unloading ties from moving car.

Brown, J., dissenting in part.

Appeal from Circuit Court, Cleburne County; R. B. Carr, Judge.

Action by E. C. Hackney against the Seaboard Air Line Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Statement by Somerville, J.

The plaintiff (appellee), a section hand, sued the defendant (appellant) for damages for personal injuries suffered while unloading cross-ties from defendant's freight train.

The case was tried on counts 1 and 2 of the complaint. Count 1 is as follows:

"On, to wit, the 14th day of February, 1925, the defendant was operating a train at and near Borden Springs, Ala., which train was engaged in commerce between the state of Alabama and Georgia, and on said date the plaintiff, who was employed by the defendant as a section hand, was required by his foreman, Henry McMichael, acting within the line and scope of his employment by the defendant, to board said train, and while said train was slowly moving along the track at or near the first milepost east of Borden Springs, Ala., and to throw from said slowly moving train cross-ties, which cross-ties were to be used in repairing the railroad track of the defendant at or near said place; and whilst the plaintiff was engaged in said business of unloading one of said cross-ties, another cross-tie fell upon or against him, and crushed his head between said two cross-ties, thereby breaking his nose, and knocked a hole in his head, and rendered him unconscious for a long time, and [recites numerous injuries]. * * * Plaintiff avers that his said suffering and injuries and loss were proximately caused by the negligence of his said foreman, Henry McMichael, this said McMichael being negligent in this, in ordering the plaintiff to work on said train and remove said ties therefrom whilst the same was in motion, when he knew, or could have known by the use of due diligence, that it was dangerous to do so. Plaintiff avers that he had to obey the orders of the said Henry McMichael under his said employment."

Count 2 contains the same allegations of fact as count 1, and charges negligence as follows:

"Plaintiff further avers that his said suffering and injury and loss was caused by the officers, agents, or employés of the defendant, whose names are unknown to the plaintiff, in charge of said train by negligently causing or allowing said train to suddenly lurch and thereby caused said cross-tie to fall upon or against the plaintiff, and injure him as herein stated."

The demurrers to these counts raise three points: (1) That the count did not show that, at the time of his injury, Hackney was performing duties under his employment in interstate commerce; (2) that the count did not show that at the time of the plaintiff's injury, the defendant was engaged in interstate commerce with reference to the particular duties which the plaintiff was performing; (3) that the count did not show that Hackney was injured while engaged in interstate commerce within the meaning of the Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665).

These demurrers were overruled, and defendant pleaded to each count the general issue and several special pleas setting up the defense of assumption of risk, to each of which demurrers were overruled.

The general scope and substance of these pleas appears from pleas 4 and 5.

Plea 4 averred:

That the flat car upon which the ties were piled was suitable and proper for the purpose for which it was used. That it was customary and usual in the business in which the defendant was engaged to unload ties from a flat car which was being moved along the right of way. That it was one of the duties of a section hand to unload cross-ties from flat cars while the flat cars were being moved slowly along the track, and that the plaintiff was a section hand in the employ of the defendant at the time the injury occurred, and that he knew, or should have known, that it was his duty as such section hand to stand upon flat cars and unload cross-ties therefrom on the right of way of the defendant, and that "the danger involved in removing the support and maintenance from a pile or stack of ties which rose to a height of from five to six feet and from which the tie which injured the plaintiff fell was obvious to any person having a knowledge of elementary natural laws, and that the danger was open and obvious to plaintiff, and said danger was a risk assumed by plaintiff by remaining in defendant's employ and engaging in throwing said ties from said flat car along the defendant's right of way while the same was being moved slowly along said track along said right of way."

Plea 5 averred:

That the flat car upon which the ties were piled was suitable and proper for the purpose for which it was used. That it was customary and usual in the business in which the defendant was engaged to unload ties from a flat car which was being moved along the right of way. That it was one of the duties of a section hand to unload cross-ties from flat cars while the flat cars were being moved slowly along the track, and that the plaintiff was a section hand in the employ of the defendant at the time the injury occurred, and that he knew, or should have known, that it was his duty as such section hand to stand upon flat cars and unload cross-ties therefrom on the right of way of the defendant. That "the danger of ties falling upon or against the plaintiff caused by the position of the ties, which position was produced by jars and jerks of the train ordinarily incident to the movement of the car during the haul from the place where the car was loaded to the place where it was unloaded by the plaintiff, was a danger ordinarily incident to the plaintiff's service as a section hand known and appreciated by plaintiff, and was a risk assumed by plaintiff by remaining in defendant's employ and engaging in unloading said ties from said car as alleged."

The evidence showed without dispute that plaintiff was employed by defendant as a section hand; that on the occasion of his injury he was unloading cross-ties from a flat

car on defendant's local freight train, as he had been directed by his section foreman, McMichael, to do; that when he was stooping to take up the last tie of one tier of the cross-ties the top tie of the next tier toppled over on his head and caused the injuries complained of. It also appeared without dispute that the speed of the train, while these ties were being unloaded and deposited along the side of the track, did not exceed two or three miles an hour, the train just barely moving; that this was the usual method of handling ties; and that these ties were stacked in tiers five or six ties high.

According to plaintiff's testimony, the stacks were about as high as his head, 'and according to the foreman McMichael's testimony they were not over 50 inches high.

As to the directions given plaintiff for doing this work, he testified:

"The morning of the accident he (McMichael) told me to tamp some ties, that I was a green hand and he would help me to unload them. * * * He is the man who directed me how to work and what work to do. * * * He took the first tie, and showed me how to do it. Then I unloaded 30 or 40 or 50 after that just like he showed me to the best I could. * * * The car was longways this way, and the ties were lying crossways this way. * * * He told me to pick up that end of the tie over there and slide it to him and he would throw it off, and I did that and he slid it off."

As to the mode of handling the ties, plaintiff testified:

"I would reach down and get one and slide it half off of the car and hand it to Mr. McMichael. I took some off the top. I did not have to reach down and get those. I just took my hand and slid it out this way to where it would get just about overbalanced, and would slide it out on top off the other tie, and it would get unbalanced, and Mr. McMichael would turn it over. I was sliding it to McMichael, and he would throw it off."

McMichael testified:

"He (plaintiff) would shove the tie something like 3 or 4 feet; then I would turn it over. That is all there was to it, just a man picked up a tie and shoved it three or four feet, and I would pick it up and turn it off the car; he would have the end off of the car."

Plaintiff testified that he had never unloaded cross-ties before, nor seen them unloaded, and was inexperienced in the work. McMichael testified that:

"Section hands are not put through any course of training before they are allowed or permitted to load or unload cross-ties."

Describing the accident, plaintiff testified:

"I reached down to pick up another tie, and it was the very bottom tie lying on the car. It was lying flat on the car. When I got down to get that there was one lying above that fell on me from the next layer of ties. * * * I 'did not see this tie fall off on me. I had seen

the tie. I knew there were four or five ties stacked up there. * * * I knew that when I stooped down. I didn't know it was going to fall."

Gafnea, defendant's flagman on this train, was standing on the pile of ties about ten feet from plaintiff. He testified that "the top tie on the tier next to where he was working rolled over and hit him on the head."

McMichael, the section foreman who was assisting plaintiff in handling the ties, testified:

"I saw the tie fall, after it started; I tried to catch this tie and hold it; I threw my hands under it, and the tie was a little heavier than I could hold. * * * I made an effort to catch the tie and missed it. * * * I had hold of the tie when it hit him. * * * I did not touch the tie before it started to roll. I did not touch any of the ties before they were shoved to me. * * * There was nothing there before this tie fell to indicate to me that it was likely to fall. * * * This was a hewed tie, flat on the bottom, lying on a sawed tie. * * * I do not know how it was if the train was not moving that this flat hewed tie, seven or eight inches wide, fell off this sawed tie. I don't know how it got down there. I don't know what pushed it off. * * * Ellis Hackney was stooping down with his face near the floor getting that last tie down there. He could have looked up and seen it coming, but he did not look up. * * * He was doing at the time what I told him to do, and how on earth the tie fell off of there I don't know."

The evidence as to the movements of the train was without material dispute. Plaintiff testified:

On direct examination: "As I recollect the train was just moving slowly, and the best I recollect it would jerk once in a while; sometimes when it would pick up it would move a little faster."

On cross-examination: "That train jerked all along up to Borden Springs after I got on the train. It jerked all the way off and on. It had been jerking off and on all the time, and 30 minutes before I got hurt I knew it was jerking."

Heist, defendant's engineer operating this train, testified:

"At the time the cross-ties were being unloaded the train was going about two or three miles an hour. It moves about a rail's length and stops and unloads a few ties at a place, and then moves up a little bit in order to scatter them along. There were no unusual jerks or lurches of my train that morning. * * * Jerks and jars are common to the moving of every freight train, sometimes, but that was a short train, and it was not necessary to do any jerks in that train. * * * Some jerks and jars are usual in the stopping and starting of all freight trains."

On cross-examination: "I knew some men were on the train to throw off ties who got on at Borden Springs. * * * Moving that slowly it was not necessary to have any jerks or

jars, and I didn't have any that morning. Even a freight train could be run that slow and stop that often without jerks and jars, and that is what I'did. * * * It was not necessary."

Holcomb, the conductor in charge, testified:

"There were no sudden jerks or sudden lurches, * * * no hard jerking at all. * * * There wasn't any hard jerking and running that morning. * * * A short train like that, going up that slight grade, can be stopped and started without lurches in the train. * * * There were no .more jerks then just starting and stopping the train. There were some jerks, of course, to move the train. * * * There can be no hard jerks in stopping a train going two miles an hour. There could not be very much of a jerk."

Gafnea, the flagman, testified:

"There were no sudden lurches or jerks of the train while the ties were being unloaded. * * * There could be no sudden hard jerk or lurch of a freight train in stopping going two miles an hour at the place where that one was. There is no more jerking or jars in the operation of a freight train than only the slack that would be in the train. That occurs in all trains. There is a slack in every drawhead, a certain amount of it. * * * And when you pull out, of course, it has got to come out. * * * There was no sudden lurch or jerk of the train at the time the tie rolled down."

McMichael, the foreman, testified:

"There wasn't any starting or stopping of the train at that time. There was no jerking or lurching of the train at the time the tie fell."

The trial, judge refused defendant's requests in writing for the general affirmative charge as to the entire complaint, and as to each count separately, and there was a verdict for plaintiff for $5,000, with judgment accordingly.

Merrill & Field, of Anniston, and Cabaniss, Johnston, Cocke & Cabaniss and Sumner E. Thomas, all of Birmingham, for appellant.

The complaint does not allege that plaintiff was engaged in the performance of any duties under his employment in interstate commerce, nor that he was engaged in the performance of any duties with reference to the interstate commerce in which the train was engaged, and states no cause of action under the Federal Employers' Liability Act. Ill. Cent. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; St. L. & S. F. R. Co. v. Sutton, 169 Ala. 389, 55 So. 989, Ann. Cas. 1912B, 366; Adams v. Southern R. Co., 166 Ala. 449, 51 So. 987; Green v. Bessemer C. I. & L. Co., 162 Ala. 619, 50 So. 289; Sloss Co. v. Mobley, 139 Ala. 435, 36 So. 181; St. L. & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Ill. Cent. R. Co. v. Rogers (C. C. A.) 221 F. 52; Walker v. Iowa Cent. R. Co. (D. C.) 241 F. 395; 39 C. J. 937; Garrett v. L. & N. R. Co., 235 U. S.

308, 35 S. Ct. 32; 59 L. Ed. 242; Ex parte A. C. L. R. Co., 190 Ala. 132, 67 So, 256; Kasulka v. L. & N. R. Co., 213 Ala. 463, 105 So. 187; Mo. R. Co. v. Watson (Tex. Civ. App.) 195 S. W. 1177; Karras v. Chicago R. Co., 165 Wis. 578, 162 N. W. 923, L. R. A. 1917E, 677; Cincinnati, etc., R. Co. v. Hansford, 173 Ky. 126, 190 S. W. 690; Hudson R. R. Co. v. Iorio (C. C. A.) 239 F. 855; Yazoo R. Co. v. Houston, 114 Miss. 888, 75 So. 690; Arizona East. R. Co. v. Head, 26 Ariz. 137, 222 P. 1041. The defense of assumption of risk is open to the master in cases. brought under the Federal Employers' Liability Act if the negligence charged is not a direct violation of a duty imposed by statute. Jacobs v. Southern R. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; S. A. L. Ry. v. Horton, 239 U. S. 595, 36 S. Ct. 180, 60 L. Ed. 458; Baugham v. N. Y. P. & N. R. Co., 241 U. S. 237, 36 S. Ct. 592, 60 L. Ed. 977. A master is not bound to either instruct laborers or inquire into their experience in work of unloading cross-ties. 39 C. J. 507; Torgerson v. M., St. P. & S. S. M. R. Co., 49 N. D. 1096, 194 N. W. 741; McGaughey v. Hines, 193 Ky. 312, 235 S. W. 742; Bradley v. Forbes T. & C. Co., 213 Mo. 320, 111 S. W. 919; Hutchinson v. Cohankus Mfg. Co. (Ky.) 112 S. W. 899; Branco v. Ill. Cent. R. Co., 119 Iowa, 211, 93 N. W. 97. An employee injured while handling cross-ties cannot recover from the master because he assumes the risk of such injury. Branco v. Ill. Cent. R. Co. supra; Bradley v. Forbes, supra; Torgerson v. M., St. P. & S. S. M. R. Co., supra; Andree v. Anaconda Copper Co., 47 Mont. 554, 133 P. 1090; Brown v. Oregon L. Co., 24 Or. 315, 33 P. 557; Davis v. Castile (Tex. Com. App.) 257 S. W. 870. Res ipsa loquitur has no application to suits between employee and employer for personal injuries. The burden of proof is on the employee to show negligence on the part of the employer and that such negligence was the proximate cause of the injury. N. O. & N. E. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167; Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564; Patton v. T. & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Smith v. Pa. R. Co. (C. C. A.) 239 F. 103; M. V. B. & I. Co. v. Walquist (C. C. A.) 243 F. 120; Jones v. Ala. Min. Co., 107 Ala. 400, 18 So. 30; Going v. Southern R. Co., 192 Ala. 665, 69 So. 73; Matthews v. A. G. S. R. Co., 200 Ala. 251, 76 So. 17; Southern R. Co. v. Dickson, 211 Ala. 481, 100 So. 665. There can be no recovery under the federal act for injuries alleged to have been caused by a jerk or jar of the train, when there is no proof that there was jerk or jar at the time of the injury, or, if there was a jerk or jar, that,it caused the injury. Patton v. T. & P. R. Co., supra; Southwerth v. Shea, 131 Ala. 419, 30 So. 774; Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414; Amer. C. I. P. Co. v. Landrum, 183 Ala. 132, 62 So.

757; Southern S. P. Co. v. Carraway, 182 Ala. 669, 62 So. 527. Where the evidence leaves it uncertain as to which of several possible causes resulted in the injury, for one or more of which the employer would be responsible and for others he would not be responsible, the jury cannot speculate that a cause for which the employer would be responsible was the actual proximate cause of the injury. Fletcher v. T. C. I. & R. Co., 163 Ala. 240, 50 So. 996; 4 Labatt, M. & S., 4899; M. V. R. Co. v. Fulgham (C. C. A.) 181 F. 91, L. R. A. 1917E, 1; Richards v. H. K. Mulford Co. (C. C. A.) 236 F. 677.

S. W. Tate, of Anniston, and Merrill & Jones, of Heflin, for appellee.

The issue of negligence as charged was properly submitted to the jury. M. & O. R. Co. v. Hedgecoth, 215 Ala. 291, 110 So. 44. The complaint sufficiently shows the plaintiff was engaged in performing duties under interstate commerce. If the defendant was negligent, and this negligence was a proximate cause of the injury, the plaintiff did not assume this risk, for the foreman told him to unload the ties and that he would show him how to do it. 39 C. J. 692; Citizens' L. H. & P. Co. v. Lee, 182 Ala. 561, 62 So. 199; Bierley v. Shelby Iron Co., 208 Ala. 25, 93 So. 829; Munson S. S. Line v. Harrison, 200 Ala. 504, 76 So. 446; A. G. S. R. Co. v. Brooks, 135 Ala. 401, 33 So. 181; West. S. C. & F. Co. v. Cunningham, 158 Ala. 369, 48 So. 109. It is the duty of the employer to warn the inexperienced employee. Robinson M. Co. v. Swiney, 206 Ala. 617, 91 So. 476; 39 C. J. 811; Sullivan v. North Pratt C. Co., 205 Ala. 56, 87 So. 804; King v. Woodstock Iron Co., 143 Ala. 638, 42 So. 27. If the negligent act of the servant which causes the injury is done in the discharge of a positive duty of the master, then the negligence therein is the negligence of the master. Westinghouse Co. v. Callaghan (C. C. A.) 155 F. 397, 19 L. R. A. (N. S.) 365. Plaintiff was working under direct orders of the foreman, and thus it became a positive duty, and the negligence of the master and not of the servant, and not one he could have assumed. Postal Co. v. Hulsey, 132 Ala. 460, 31 So. 527. Plaintiff was engaged in work of interstate commerce. B. & O. R. Co. v. Darr (C. C. A.) 204 F. 751, 47 L. R. A. (N. S.) 4; L. & N. R. Co. v. Blankenship, 199 Ala. 521, 74 So. 960. An employee cannot be held to have assumed a risk where he was ignorant of the facts on which a proper appreciation of the risk depended; Breen v. Field, 157 Mass. 277, 31 N. E. 1075; Southern Pac. Co. v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 392; Patterson v. P. & C. R. Co., 76 Pa. 393, 18 Am. Rep. 412. Under the federal act, if the injury resulted in whole or in part from defendant's negligence, the cause of action is established; contributory negligence is not a bar. Davis v. Sorrell, 213

Ala. 191, 104 So. 397; Southern R. Co. v. Peters, 194 Ala. 100, 69 So. 611; A. C. L. R. Co. v. Jeffcoat, 214 Ala. 317, 107 So. 456; A. C. L. R. Co. v. Russell, 215 Ala. 600, 111 So. 753.

SOMERVILLE, J. [1] It seems to be settled by the decisions of the federal courts that a railroad employee who is engaged in the work of delivering at the place of use material to be used in the repair, construction, or operation of those instrumentalities directly used by the railroad company in the business of interstate commerce, such as rolling stock, station houses, and roadways, is himself "employed in such commerce," within the meaning of the federal Act (Fed. St. Ann. 1909 Supp. p. 584 [45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665]). Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Ill. Cent. R. R. Co. v. Nelson, 203 F. 956, 122 C. C. A. 258; Eng v. So. Pac. R. R. Co. (D. C.) 210 F. 92. See, also, Ill. Cent. R. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, and note 164–168; Birmingham Belt R. Co. v. Ellenburg, 213 Ala. 146, 104 So. 269. This view of the law has been followed by this court in So. Ry. Co. v. Peters, 194 Ala. 94, 69 So. 611, wherein apt authorities are cited. The case of Y. & M. V. R. R. Co. v. Houston, 114 Miss. 888, 75 So. 690, appears to be in conflict with that view; but D., L. & W. R. R. Co. v. Yurkonis, 238 U. S. 439, 444, 35 S. Ct. 902, 59 L. Ed. 1397, is clearly distinguishable, since in that case the employee was injured while mining coal at another place, and not in delivering it directly at the place where it was to be used.

[2] Under these authorities we are constrained to hold that a section hand who loads or unloads ties on or from the carrier's train, placing them on the right of way for use in repairing the carrier's track, which is an interstate line, and which is used for transportation in interstate commerce, is employed in such commerce within the meaning of the federal Act.

[3, 4] But when the plaintiff would prosecute a suit under that act, he must allege in his complaint that he was injured while he was employed in interstate commerce, or else he must allege facts from which the law would imply that he was so employed. The complaint herein does not allege that the plaintiff was thus employed or engaged. It alleges merely that the defendant's train, on which plaintiff was operating, was engaged in commerce between the states of Georgia and Alabama. But his employment had nothing to do with the operation of the train itself, nor was it in any sense a part of interstate commerce unless the ties unloaded by him were for the repair of a line of interstate road over which such commerce was carried. That such was the case might be a permissible inference of fact, but certainly

not one of law—not one which the court can draw in aid of the pleader to supply the omitted averment. Both counts of the complaint are deficient in this respect, as aptly indicated by the fifth and sixth grounds of demurrer, which should have been sustained.

[5] Other grounds of demurrer are to the point that the complaint does not show that plaintiff was performing duties under his employment in interstate commerce, at the time of his injury. The complaint does, indeed, omit the usual categorical averment to that effect; but it shows that plaintiff was employed in work not inconsistent with his general employment as a section hand, under the orders of the section foreman, his immediate superior, who, in so ordering, "was acting within the line and scope of his employment by the defendant." This is sufficient for the purpose in hand. So. Ry. Co. v. Guyton, 122 Ala. 231, 240, 25 So. 34; 39 Corp. Jur. 277, § 402. As to these grounds, the demurrer was properly overruled.

With respect to the first count of the complaint, declaring upon the negligent order of defendant's section foreman, McMichael, defendant insists that the general affirmative charge, as requested, was erroneously refused. The argument is that the work required to be done by plaintiff, viz., to board the slowly moving train, and, while it was thus slowly moving along, to throw off of it some cross-ties it was carrying, was, as a matter of law, not dangerous work; and hence that the order to do it was not a negligent order, and involved no breach of duty to plaintiff.

[6] To constitute a negligent order in this connection—

"It must have been reasonably apparent to the master, or his vice principal who gave the order, under the conditions as he knew or ought to have known them, that the servant's execution of his command would expose the servant to some peril, beyond the ordinary risks of his service, and against which ordinary and reasonable care on his part would probably not suffice to protect him. * * * If this peril was obvious to the servant, and might readily be avoided by him while fully discharging his duty of service in conformity with the order given him, the master had the right to assume that the servant would both observe the peril and avoid it; and the order was not negligently given. * * * If, on the other hand, the peril was not obvious, but was inherent in the conditions necessarily surrounding the servant while executing the master's order (conditions which the master could and should have known, and of which, if not remedied, the servant could expect the master to seasonably inform him), the master's order, without such warning, was negligent and actionable." Woodward Iron Co. v. Wade, 192 Ala. 651, 657, 68 So. 1008, 1010.

[7, 8] A well-established corollary to these principles is that:

"The master is not required to foresee the negligence of the servant and to guard against it, nor is he required to take more care of the servant than the servant may reasonably be expected to take of himself." 39 Corp. Jur. 282, § 408; Roberts v. Pell City Mfg. Co., 197 Ala. 106, 108, 72 So. 341.

And, again:

"The master is not required to caution a servant against unexpected, improbable, and unusual occurrences, where there is no appearance of danger, his duty being limited to such perils as may reasonably be anticipated." 39 Corp. Jur. 506, § 615.

[9] More specifically—

"Where a master employs workmen to do simple tasks, requiring only average strength and intelligence, he is not bound either to instruct the laborers or to inquire into their experience, and the same rule holds true where the appliances and devices which the servant is required to use are of a simple character." 39 Corp. Jur. 507, § 617, citing numerous cases; Roberts v. Pell City Mfg. Co., 197 Ala. 106, 72 So. 341.

In the instant case, cross-ties weighing as much as 150 pounds each were stacked crosswise on a flat car in tiers five or six ties high. The ties were hewn oak ties, 8½ feet long, 9 inches wide, and about 8 inches thick, and the stacks were about 50 inches high. Plaintiff was an able bodied man, 28 years of age, and apparently of average strength, intelligence, and experience, having served twice before as a section hand, and at this time for 30 days or more. He testified that he had never unloaded ties from a train before, but had handled ties, and hauled them from the woods, and had placed them after they were unloaded. The train was just moving at a speed of two or three miles an hour. To assist in throwing ties off of such a train at intervals, as needed, was a part of the regular work of defendant's section hands, and it was not customary to give them any preliminary training for such work. McMichael, the section foreman, instructed plaintiff to unload the ties, and assisted him by rolling the ties overboard as plaintiff took them singly from the stack, lifting up one end, and slid them endwise to him, as McMichael had directed him and showed him, by example, how to do.

[10] We are satisfied, from the undisputed evidence in the record, that the top tie that fell on plaintiff was either not placed flush on the tier originally, or else was slowly jostled from a flush position, inch by inch, by the movement of the train, until gravity, or an inadvertent knock by a movement of plaintiff, operating on the overhang, finally cast it over. More likely all of these conditions were operating conjointly. Manifestly, it could not have been substantially due to any sudden jerk or lurch of the train at that moment of time. In any event the position of this tie, and the condition of each tier, were open to plaintiff's observation, much more immediately and plainly than they were to McMichael's, for they must have been direct-

ly before his eyes each time he lifted and handled a tie. Again, there was no occasion for plaintiff to stoop and place his head so low that a tie, even from the top, could fall upon and injure him. The order to do this work neither required nor contemplated such an exposure. Instead of doing that he could have handled the top ties on each new tier before taking the bottom tie of the one preceding, as ordinary intelligence and common experience would suggest. Every adult person of ordinary intelligence must be presumed to understand the general law of gravity. Brown v. Swift, 91 Neb. 532, 136 N. W. 726. It appears to us, therefore, that the work which plaintiff was instructed to do was simple and ordinary work, requiring neither skill, nor instructions, nor warning of danger; and that the danger from the chance falling of a superimposed tie was one which he could easily see and understand, and which he could be expected of his own ordinary intelligence to avoid, without supervision by his superior.

[11] We are unable to see that the fact that the train was moving two or three miles an hour—just moving—makes any material difference in the application of the principles of law that govern. As observed by the Supreme Court of Iowa, work is not dangerous to the worker when, "if a reasonable and prudent man had been asked as to whether there was a given danger, he would have considered the question an absurd one." Rook v. Davenport, etc., Ry. Co., 182 Iowa, 227, 235, 165 N. W. 419, 421. Our conclusion is that the order complained of was not negligent, and that the general affirmative charge should have been given for defendant as to the first count of the complaint.

This view of the case is well supported by decisions of the ablest courts.

In Sims v. E. & W. R. Co., 84 Ga. 152, 10 S. E. 543, 20 Am. St. Rep. 352, a youth of 17, while unloading lumber from an open flat car, was injured by some of the lumber falling upon him. Said the court, per Bleckley, C. J.:

"The grounds of liability set out in the declaration are the failure of the company to warn Sims of the danger of the work assigned to him, and the omission to give him needful and proper instructions by which to perform it. * * * There is no evidence that he was lacking in common sense or in the ordinary capacity of a youth of 17 years of age. The labor which he undertook was not one requiring the skill of an expert or the experience of a practiced hand or eye. It was such work as any common laborer of his age is capable of doing, just as much so as to plow or chop. It is manifest that the injury did not result from the hazardous nature of the work, but either from the failure of Sims to execute it with due care, or from some defect in the car; and if it resulted from either of these causes, there could be no recovery in the present action. * * * The question that the work was not, in its nature, attended with any extraordinary hazard or danger, was settled when this case was here before. E. & W. R. R. Co. v. Sims, 80 Ga. 807 [6 S. E. 595]."

In Torgerson v. Minn. & St. P. R. Co., 49 N. D. 1096, 194 N. W. 741, the plaintiff was ordered to unload doors piled in three piles in a box car, and after removing the central pile he was injured by the falling over of one of the other piles. Said the court:

"When the work is simple and the danger is observable to an ordinarily prudent and careful person, there is no duty to warn. * * * The work of unloading these grain doors was not complicated or difficult; * * * the most inexperienced and unskilled workman, using his eyes and his intelligence, could unload such doors without any instructions or rules to guide him. There was no latent danger inherent in the work or in the piles of doors which any ordinary man could not see and appreciate. To have warned plaintiff that one pile of doors might tumble down if the support of another pile were withdrawn would have been but to call his attention to the operation of a natural law, the law of gravitation, presumed to be known to him * * * under conditions so obviously commonplace that the average boy would have scorned the warning as alike a reflection upon his intelligence and upon his capacity for ordinary observation. * * * We are constrained to hold that, in the exercise of common observation, any man of ordinary intelligence would understand the situation entirely and appreciate the risk to his person involved in removing the support to a pile of lumber. No warning could have made the danger plainer; the probability that the doors might fall could not be better known or understood by the employer than by the employé; it was obvious to any person having knowledge of elementary natural laws, presumed a common possession of the mass of mankind."

In Branco v. Ill. Cent. R. R. Co., 119 Iowa, 211, 93 N. W. 97, a section hand was engaged in unloading ties from a box car at points on the road where the train slowed down for that purpose. The ties were piled lengthwise in the car in three tiers. After the middle tier was nearly exhausted, the plaintiff was standing in the car door, and, when the train speeded up with a jerk, several ties fell off from the end pile and injured him. Said the court, per Bishop, C. J.:

"Whatever danger there was incident to the work in which appellant was engaged was not only obvious to him, but, as we have said, he had personal knowledge of the character thereof from previous experience. Indeed, we think there is much room for saying that he assisted in creating the dangerous condition out of which his accident grew; [and] that such accident was the direct result of an improper method employed in unloading the car. It seems to be reasonably certain that, had the piles of ties been lowered with some degree of uniformity, the accident could not have happened, and this appellant must be held to have known. Taking the facts to be as we find them, and we think that the risk of accident from the sliding of ties in the car was of such character that it must be held to have been assumed by appellant, and therefore no recovery can be had.

The principle is that, where the servant has as good an opportunity as the master to ascertain and avoid the danger for himself, he will have no recourse on the master if injured."

In the Branco Case, it is true, the plaintiff had had previous experience in the work; but, while that factor is stated in the opinion by way of aggravation, the controlling factor was the obviousness of the danger. In the instant case, plaintiff had handled ties and was familiar with their weight and qualities.

Other cases illustrating the principle in general will be found in Brown v. Oregon Lumber Co., 24 Or. 315, 33 P. 557; Andree v. Anaconda Copper Min. Co., 47 Mont. 554, 133 P. 1090; Haskell v. Kurtz Lbr. Co., 181 Iowa, 30, 162 N. W. 598, L. R. A. 1917F, 881; Whalen v. Rosnosky, 195 Mass. 545, 81 N. E. 282, 122 Am. St. Rep. 271; Davis, Agent, v. Castile (Tex. Com. App.) 257 S. W. 870, 872. In the last-cited case the plaintiff was repairing a car, and incidentally had to shift the position of several tiers of lumber, after which one of the remaining tiers fell over and injured him. Pertinently to the question here under consideration, the court observed:

"It is a matter of the very commonest knowledge that planks of lumber, 8 or 10 inches wide, less than an inch thick, stacked one on the other to the height of 4 or 5 feet, without brace or support of any kind, are very likely to topple over and fall by reason of their own weight."

The case of Duke v. O'Rourke, 133 La. 998, 63 So. 495, involved injury to a workman, while loading a truck in a warehouse, by the falling of bales of burlap stacked nearby. The place was dark, and in holding the master liable the court said:

"The danger was not apparent. If one works out of doors in a well lighted place, or in a well lighted house, he is expected to see that the columns or piles are in a threatening condition; but, if there is no light, or the light is not sufficient, the master should have a superintendent to see to the piles and to their not being dangerous."

That case is not opposed to our conclusion here, but, in fact, supports it.

In the brief of counsel for appellee it is repeatedly stated that McMichael knew that plaintiff was doing dangerous work, and promised to show him how to do it without danger to himself, and to see that he was properly protected; and much of the argument for liability is grounded on those assumptions. A very minute review of the evidence, however, discovers no support for such statements. McMichael showed plaintiff how to lift and shove a tie, as a means of efficiency and dispatch, we would presume, rather than as a mode of avoiding danger or conserving safety. Certainly any man of the most ordinary intelligence could understand such a mode of procedure, and would also understand that he must observe the condition of the stacks, and particularly the position of the upper ties before he should needlessly place his head in a position of danger underneath them—a danger easily avoided, as already pointed out, by removing the next top ties before stooping for the last bottom ties of each tier.

[12, 13] It is further insisted for appellant that it was entitled to the general affirmative charge under the second count of the complaint because the evidence fails to show either that the tie was caused to fall by a sudden lurch of the train, or that such a lurch, if it occurred, was negligently caused. Our examination of the evidence, as shown by the bill of exceptions, confirms the validity of this contention. No witness testified that there was any jerking or lurching of the train, sudden or otherwise, at the time of the accident, and two witnesses, both trainmen, testified positively that there was nothing of the kind. Plaintiff testified that the train was jerking "off and on" all the way, and that "it would jerk once in a while." He avoided making any statement that it was jerking at or about the time of the accident. There is no conflict in the evidence on this proposition. The count (No. 2) charges and relies upon a sudden lurch of the train as the cause of the falling of the tie, and not upon any continued jostling of the ties by which a dangerous condition was created. The evidence entirely fails to support the allegations of the count; and the rule of res ipsa loquitur is obviously without application. We need not determine whether, if there had been a sudden jerk or lurch of the train, presently causing the fall of the tie, there was any evidence tending to support the charge that it was negligently done under the circumstances.

For the errors noted, the judgment will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

BROWN, J. (concurring). I concur in so much of the opinion of the majority as deals with the rulings of the court on the demurrers to the complaint, though it would seem, in view of the undisputed evidence, that the plaintiff was injured "while employed in interstate commerce," the doctrine of error without injury might well have been applied as to these rulings. Birmingham Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339; Best Park Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929. This, without offending any federal right, as such matters relate to state practices. Kansas City Western R. Co. v. McAdow, 240 U. S. 51, 36 S. Ct. 252, 60 L. Ed. 520; Central Vermont R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; 2 Roberts' Fed. Liability, p. 1167, § 670.

In view of the pleadings circumscribing the scope of the issues, the first count limiting the inquiry to negligence of foreman McMichael "in ordering the plaintiff to work on said train and remove said ties therefrom, and the second count to negligence of the officers, agents or employees of the defendant * * * in charge of said train, negligently causing said train to suddenly lurch and thereby causing said cross-ties to fall," I concur with the majority that the defendant was entitled to the affirmative charge for failure of the proof to support these averments. But I am not in accord with the view that the plaintiff assumed the risk of the condition that developed and resulted to his hurt.

It is conceded by the majority "that the plaintiff was employed in a work not inconsistent with his general employment as a section hand, under the orders of the section foreman, his immediate superior"; * * * that ."McMichael, the section foreman, instructed plaintiff to unload the ties and assisted him by rolling the ties overboard as plaintiff took them singly from the stack, lifting up one end, and slid them endwise to him, as McMichael had directed him and showed him, by example, how to do." The cross-ties being unloaded were stacked "crosswise on a flat car" constituting a part of the train, which was moving forward at a low rate of speed, its movement attended with "jerks, off and on," and with the conditions affecting the risk changing with the movement of each tie from the moving car. In these circumstances it was negligence for McMichael the foreman, under whose supervision the work was being done, to create or allow such conditions to develop or exist as would render an injury probable, which, with the exercise of due care, he might have foreseen and prevented. L. & N. R. R. Co. v. Handley, 174 Ala. 593, 56 So. 539; Sloss-Sheffield Steel & Iron Co. v. Green, 159 Ala. 182, 49 So. 301; Tenn. C. I. & R. R. Co. v. George, 161 Ala. 422, 49 So. 681; Western S. C. & F. Co. v. Cunningham, 158 Ala. 369, 48 So. 109.

The Federal Employers' Liability Act abrogates the common-law fellow servant rule, and places the negligence of a coemployee on the same basis as the negligence of the employer. Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016. And under the uniform authority, both state and .federal, the employee does not assume risks arising from the negligence of servants, agents, or employees for whose negligence the employer is made liable by the Employers' Liability Act. Chesapeake & Ohio Ry. Co. v. De Atley, supra; L. & N. R. R. Co. v. Handley, supra.

I do not concur in the holding of the majority that res ipsa loquitur doctrine as interpreted and applied by the federal courts is without influence in the circumstances here presented. Roberts' Federal Liability, p. 951, § 544.