JAMES CONNORS, Appellant, v. THE DELAWARE AND HUDSON COMPANY, Respondent.

Third Department, September 23, 1932.

*Chernin & Gold* [*A. E. Gold* of counsel], for the appellant.

*Joseph Rosch* [*Harvey D. Hinman* and *J. L. Fitzgerald* of counsel], for the respondent.

VAN KIRK, P. J. Defendant contemplated constructing a new crossover from its main line to a side track used in interstate commerce; this was to be part of the construction of a new yard. There had been no crossover where this one was to be installed. The construction was not yet begun when plaintiff received his injuries. He was moving ties from storage and placing them near the location of the proposed crossover.

The action was tried before a jury. At the close of the evidence defendant moved for a dismissal of the complaint on the merits. This motion was retained pending the taking of a verdict. The jury rendered a verdict for plaintiff. The court then set aside the verdict and granted the motion to dismiss. This appeal follows.

The plaintiff when injured was not employed in interstate commerce, or in work so closely related thereto as to be a part thereof. His work was simply the placing of the ties in a convenient place for use in constructing the crossover; that is, placing them in temporary storage. That the crossover, when finished, was intended for use in interstate commerce does not bring his case within the Federal Employers' Liability Act. (*New York Central R. R. Co.* v. *White*, 243 U. S. 188, 191; *Chicago, Burlington & Q. R. R. Co.* v. *Harrington*, 241 id. 177; *Pedersen* v. *Delaware, L. & W. R. R. Co.*, 229 id. 146.) In the *White Case* (*supra*) the railroad company was engaged in the construction of a new station and track intended to be used when finished in interstate commerce. White was a night watchman employed in guarding the tools and materials intended to be used in the new construction. The court said: " The test is, ' Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? ' " and held that decedent's work bore no direct relation to interstate transportation and had to do solely with construction work, which is clearly distinguishable; citing the *Pedersen Case* (*supra*). In the *Harrington Case* (*supra*) coal had been brought into the railroad yards from another State and the cars which carried it were placed on storage tracks a few days before. Harrington was injured while removing the coal from these cars to the coal chutes where the coal would be convenient

for supplying locomotives to be used in interstate and intrastate traffic. The court said (at p. 180): " This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use," and, after stating " the true test " as above quoted from the *White* case, continues: " Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes."

We find no distinction in principle between these cases cited and the instant case.

The order and judgment should be affirmed, with costs.

HINMAN and CRAPSER, JJ., concur; McNAMEE, J., dissents, with an opinion in which HILL, J., concurs.

McNAMEE, J. (dissenting). The defendant is a railroad corporation engaged in interstate commerce, and employed the plaintiff as a section hand. The defendant has a main line of railroad running through the city of Binghamton, and also a side track connected therewith by a crossover, known as Shay's siding, and it devoted both of these to interstate transportation. The defendant was making a number of alterations and improvements in its Binghamton yard, and among these was the installation of an added crossover to connect the main line of its railroad with Shay's siding a few feet away. In order to effect this alteration it was necessary to install a quantity of railroad " switch " ties, which were from twelve to eighteen feet long, long enough to support not only this new crossover but, at that point, to extend under and support the tracks of the main line. These ties had been taken by the defendant from its storage place in the railroad yard, by means of a flat car, and were being distributed along the location where the crossover was to be constructed; and it was while thus unloading these ties that the plaintiff was injured. It was the duty of the plaintiff to count the ties as they were thrown from the car, presumably to insure the proper number for the alteration, and then place them at convenient points along Shay's siding. At the time of the accident the defendant had planned and intended to build the crossover, and the ties were being allocated to that use. The defendant offered no evidence on the question of the accident; and these facts appear clearly from the admissions of the defendant and from the proof.

The trial court reserved a motion to dismiss the complaint at the close of the proof, and submitted the case to the jury. The jury returned a verdict in favor of the plaintiff; and thereupon the trial judge, in effect, set aside the verdict, and granted the motion for dismissal on the merits.

The question is whether the plaintiff at the time of the accident was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it; but two distinct aspects of that question are presented by the briefs, viz., *first*, whether the operation of installing the crossover between the main line and Shay's siding was " new construction," within the meaning of the Federal Employers' Liability Act, as distinguished from what is meant by ordinary repairs, betterments or extensions; and *second*, whether the plaintiff, within the meaning of the act, was engaged in that kind of duty which constitutes service in interstate transportation, or in work thus closely related to it.

The United States Supreme Court has said that when work bears no direct relation to interstate transportation, and has to do solely with construction, it does not come within the Federal act ( *New York Central R. R. Co.* v. *White*, 243 U. S. 188, 192). That decision was reached in a case involving the construction of a new railroad station and the laying of new tracks. In the case before us a comparatively insignificant construction was contemplated by which two instrumentalities already devoted to interstate transportation would be made more convenient and useful in defendant's interstate business, by connecting one end of this crossover with the main line and the other end with Shay's siding. The crossover enlarged the use of the main line as well as that of the siding, and it had no other purpose. It is evident that the switch ties in question were intended to replace other ties already used under both of these tracks, and accordingly that both of these interstate tracks were to be affected by the new crossover. No case has been called to our attention which has held that work similar to this was new construction within the meaning of the Federal act.

The defendant relies upon *Seaver* v. *Payne* (198 App. Div. 424), decided by this court and affirmed by the Court of Appeals (234 N. Y. 590). But there Mr. Justice COCHRANE pointed out that the functions of the new and the old instrumentalities were materially different, were not intended to perform the same kind of service, and that the plaintiff's work had nothing to do with the old instrumentality; whereas, here plaintiff's work bore directly upon both of the old instrumentalities. It has been thoughtfully said: " Repair often, if not usually, involves more or less construction and substitution. It likewise involves betterment and improvement. * * . * The trend of the cases thus far decided indicates that labor and betterment upon an interstate line of railway will not be deemed new construction work, unless it is clearly such." And the same case, referring to the items of alleged new work, observes

that " They could not stand alone. They had no function to perform except as a part of the electric system of the defendant railway, which system was in actual operation at the time of the injury." (*Ross* v. *Sheldon*, 176 Iowa, 618.)

The appellant relies much on the *Harrington* case. There a switchman was engaged in switching cars of coal from a switch track to a coal shed, to be used by the railroad company in accordance with its needs, either for intrastate or interstate transportation. And when such needs arose this coal was transferred by means of chutes to the locomotives, without regard to the nature of the transportation to which they were devoted; and there it was held that the switchman was not engaged in interstate transportation, but merely in the storing of coal in the company's bins. That case is easily distinguishable from the case before us in the fact that the switchman was hauling only to a place of storage coal which might or might not be used in interstate commerce; and at the time of the hauling of the coal it had not been allocated to locomotives that were hauling interstate commerce. (*Chicago, Burlington & Q. R. R. Co.* v. *Harrington*, 241 U. S. 177.)

The fact that the work contemplated by the defendant was not completed for a period of nearly three months is not a matter of importance here. The proof indicates that the work in question was going forward as rapidly as consistent with the other work in the yard, and there is no proof that at the time of the accident any particular delay was intended. And there is authority for the statement that if there were delay, or if the work were entirely abandoned later, it would not for those reasons be taken out of the operation of the statute. (*Southern Railway Co.* v. *McGuin*, [Cir. Ct. App.] 240 Fed. 649, 650; 244 U. S. 654.) And because some new ties were to be substituted and some new rails laid, it does not follow that the alteration was " new construction;" since " what would be designated in general terms new construction work may or may not be of such a character as to make those engaged upon it employees in interstate commerce." (*Otterstedt* v. *Lehigh & Hudson River R. Co.*, 234 N. Y. 203, 206.)

And the Circuit Court of Appeals, in holding that work was not new construction, said that it is immaterial whether the work be regarded as repair, replacement or extension of existing switching facilities, so long as it related to and affected the existing interstate instrumentalities. (*Oregon Short Line R. Co.* v. *Gubler*, 9 F. [2d] 494, 496; 273 U. S. 709.) In deciding a case very similar in principle, as well as in fact, the Court of Errors and Appeals of New Jersey, discussing the question of new construction, said: " We

think that the defendant lays too much stress upon the words ' new work.' In a sense, all work is new, but from the fact that it is new, it does not follow that it is not a part of the interstate commerce in which the carrier is engaged." There the employee was engaged in the work of installing new devices for operating a switch connected with interstate tracks. And the court said further: " He was not working on a new line, but the old one being amplified for more efficient service. The controlling device being installed to operate this new switch or crossover, was not separate and apart from the main line * * * but was, in a sense, a part and parcel of the main line itself, something attached to and operated in connection with it in carrying on such commerce. * * * We do not think that the work of connecting by a crossover switch for convenience in operation an existing interstate track with another existing track, also used for interstate purposes, and running side by side on the same general roadbed " is within the statute. (*Swank* v. *Penn. R. R. Co.*, 94 N. J. L. 546, 549, 550; 254 U. S. 638.) There seems small room for doubt that the crossover in question, intended as it was at the time of the accident to connect with two tracks of the defendant, and as it was subsequently built, was not new construction within the meaning of the Federal act, nor within the authoritative cases on the subject.

As to the *second aspect* of the question it is evident that plaintiff was not working on the rails of the main line, nor of the siding, nor even on the roadbed; but that he was helping to bring to the *locus in quo* the *prepared* materials essential to the alteration contemplated and planned, and which was subsequently made. The contention of the defendant that the ties were being placed along the tracks in " temporary storage " is not appealing, but rather a tenuous refinement, as would be the argument if it were applied to tools or materials brought to a job in the morning for use during the day. The ties were essential to the work to be done, and because of their nature it would not be good practice, nor the common practice of railroads, to bring one tie at a time as it was to be placed under the rails. And the allocating of the ties where they could be reached conveniently and without delay as the work progressed was as clearly a part of making the alteration as was the digging of the trenches to receive the ties under the rails.

The plaintiff here as a section hand was generally engaged in work on the roadbed; and the Circuit Court of Appeals has said that if " his general service is primarily and directly in the interest of interstate commerce, and it is seen that he was at the time engaged in a service necessarily precedent or consequent to or in the full execution of the primary object," the workman is " engaged in interstate

transportation. * * * To serve interstate commerce must be seen to have been, from the outset, a substantial purpose of the work in which the injured employee was then engaged." (*Rice* v. *Baltimore & O. R. Co.*, 42 F. [2d] 387, 390.) And again the same court has said " that preparatory steps taken with the purpose of furthering the actual work of repair or reconstruction constitute a part of such commerce within the meaning of the act. * * * Unloading the ties at a place near enough to the bridge for them to be conveniently available for the use to which they were destined was a part of the task of getting the bridge repaired." (*Kansas City Southern R. Co.* v. *Martin*, 262 Fed. 241.) In Alabama it has been held that unloading ties at the place where they were to be used for the repair of tracks devoted to interstate commerce was within the Federal act. (*Seaboard Air Line R. Co.* v. *Hackney*, 217 Ala. 382.)

The *Pedersen* case is so similar in principle, as well as in fact, as to seem to be a controlling authority here. There the plaintiff was carrying a quantity of bolts to be used in altering and repairing a bridge devoted to interstate commerce, and the court said: " The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * The point is made that the plaintiff was not, at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, * * *." (*Pedersen* v. *Delaware, L. & W. R. R. Co.*, 229 U. S. 146, 152.)

A boy carrying water to a section gang working on the roadbed of an interstate railroad (*Chesapeake & Ohio R. Co.* v. *Russo*, [Ind. App.] 163 N. E. 283, 284; 282 U. S. 846), an employee whose duties were to care for a camp car of the railroad company in which its gang of bridge carpenters lived and were moved from place to place while engaged in interstate commerce, and to cook for the gang, he having no duty to work upon the bridges (*Philadelphia, Baltimore & Washington R. R. Co.* v. *Smith*, 250 U. S. 101, 102), and a worker employed in distributing rails along an interstate railroad, to replace rails then in use (*Reed* v. *Dickinson*, 184 Iowa, 1363, 1365), were all held to be engaged in interstate transportation.

Within the evident facts here, and within the cases above mentioned, and within the trend of the many other cases not cited, the operation of installing the crossover track in question

was not " new construction," and the work in which the plaintiff was engaged at the time of injury was interstate transportation, within the meaning of the Federal act. (See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143; U. S. Code, tit. 45, § 51 *et seq.*)

Accordingly, the order and the judgment dismissing plaintiff's complaint on the merits should be reversed, and the verdict of the jury reinstated, with costs to the plaintiff.

HILL, J., concurs.

Judgment and order affirmed, with costs.